**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3748-16T1

M.R.,

    Plaintiff-Appellant,

v.

F.B., deceased, and
K.B., legal guardian
for S.R.,

    Defendants-Respondents.

_____

Submitted March 8, 2018 — Decided July 13, 2018

Before Judges Haas and Gooden Brown.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Somerset
County, Docket No. FM-18-0003-11.

Villani & Deluca, PC, attorney for appellant
(Benjamin M. Hoffman, on the brief).

Respondents have not filed a brief.

PER CURIAM

    In this post-judgment matrimonial case, plaintiff (father) appeals from a March 24, 2017 Family Part order denying his motion to terminate or modify his support obligation for his then twenty-

five-year-old autistic son, S.R.,[1] and awarding attorney's fees based on plaintiff's bad faith. We affirm in part and reverse in part.

We glean the following facts from the record. Plaintiff and defendant (mother) married in 1989. Two children were born of the marriage, J.R., born September 1990, and S.R., born February 1992. The parties divorced in New York in 1997. Defendant moved to New Jersey with the two children shortly thereafter, and plaintiff moved into a house in Brick, New Jersey, which he had purchased prior to the parties' marriage.

On September 21, 2009, plaintiff moved to register the New York Judgment of Divorce (JOD) in New Jersey and to reduce his child support obligation, which the JOD initially set at $485 per week, with built-in increases over the ensuing years. Defendant filed a cross-motion to enforce the JOD and enter a judgment against plaintiff for unpaid child support as well as other relief. On November 13, 2009, the trial court entered an order domesticating the foreign judgment and, on April 20, 2010, following a plenary hearing, reduced plaintiff's child support obligation to $327 per week from September 21, 2009 to December 31, 2009, with a further reduction to $305 per week beginning

---

[1] We use initials to protect the children's privacy.

January 1, 2010. The court also fixed plaintiff's total arrears as of September 21, 2009, at $110,956, entered judgment in favor of defendant in that amount, and ordered plaintiff to pay $120 per week on arrears, for a combined total of $425 per week, effective January 1, 2010.

In granting the reduction, the court determined that the decline in plaintiff's financial circumstances and J.R. becoming a full-time residential college student since the JOD was entered "constitute[d] a change in circumstances, requiring that child support be recalculated." According to the court, when the JOD was entered, child support was based on plaintiff earning $80,000 and defendant earning $51,000 per year. Shortly after the divorce, plaintiff declared bankruptcy and switched careers, while defendant's income increased, resulting in "some degree of a reversal in fortunes."

Nonetheless, finding plaintiff's "continued failure to be gainfully employed . . . unacceptable," the court imputed to plaintiff an income of $77,000 for 2009 and $65,000 for 2010, based largely on the operation of a parking lot leasehold he purchased in 2008, while defendant earned $121,703 in 2009 and $114,000 in 2010. In recalculating plaintiff's child support obligation, the court added to the Child Support Guidelines (Guidelines) $350 in weekly extraordinary expenses to be

apportioned between the parties for S.R.'s specialized care as S.R. had a "constant need for a [full-time] care provider."

Subsequently, plaintiff moved to emancipate J.R. and terminate his child support, and to recalculate child support for S.R. based on the parties' financial circumstances at the time. Defendant cross-moved to: (1) find plaintiff in violation of litigant's rights for failure to pay child support in accordance with the April 20, 2010 order; (2) depose plaintiff as to his "current assets, income, and liabilities"; (3) update the existing judgment against plaintiff for child support arrears; (4) compel plaintiff to sell his home in Brick to pay his arrears; and (4) obtain counsel fees and costs.

On May 27, 2016, with defendant's consent, the court emancipated J.R., effective July 1, 2015. The court then recalculated child support for S.R., imputing annual income to plaintiff of $65,000 and utilizing defendant's reported annual income of $135,000 for 2015, to reduce plaintiff's child support obligation to $264 per week, with arrears of $120 per week. The court rejected plaintiff's claim that he earned significantly less than the amount imputed to him in 2010, finding plaintiff's Case Information Statement (CIS) and "related financial documents and testimony as to [his] current lifestyle to be at best mischaracterized, and at worst misrepresented."

4

Based on plaintiff's "persistent and pervasive pattern of non-compliance with [c]ourt [o]rders and history of delinquency in the payment of child support," the court also entered an updated judgment in favor of defendant totaling $148,324.73 for child support arrears. Additionally, the court awarded defendant $3200 in counsel fees pursuant to Rule 5:3-5(c), Rule 4:42-9, and R.P.C. 1.5(a), and ordered plaintiff to provide the requested discovery and submit to a deposition. The court, however, denied without prejudice defendant's motion to compel plaintiff to sell his Brick home.

Plaintiff moved for reconsideration of the child support and counsel fee awards, which motion was denied on August 25, 2016. The court determined that plaintiff's reconsideration motion was "[p]rocedurally . . . out of time" and "[s]ubstantively . . . failed to present any new, relevant and material facts that were not already disclosed and considered by the [c]ourt."

On September 20, 2016, defendant died from cancer, leaving her daughter, K.B., to serve as executor of her estate and S.R.'s legal guardian. Prior to her death, defendant had filed another motion to compel the sale of plaintiff's Brick home to satisfy the arrears judgment. In her capacity as S.R.'s legal guardian, K.B.

pursued the motion on S.R.'s behalf,[2] certifying, in accordance with Rule 4:59-1(d), that her efforts to execute against plaintiff's personal property were unsuccessful because plaintiff had no assets other than the Brick home. K.B. certified further that through her own investigation, she discovered that plaintiff had misrepresented the equity and the value of the property. K.B. also sought counsel fees in connection with the motion, totaling $3327.50.

Plaintiff opposed the motion and cross-moved for a recalculation of his child support obligation for S.R. pursuant to Rule 4:50-1. Plaintiff asserted the May 27, 2016 child support order should be vacated or modified in light of the new law, N.J.S.A. 2A:17-56.67, terminating child support by operation of law at age nineteen, but no later than age twenty-three.

Additionally, plaintiff certified the judge erred because he "used the . . . Guidelines to calculate child support for [S.R.]," instead of "the factors set forth under N.J.S.A. 2A:34-23." Accordingly, plaintiff sought all expenses associated with S.R.'s care in order to assess his needs as well as "any and all documents" regarding defendant's Will and estate to determine whether S.R.

---

[2] In a subsequent order, the judge replaced all references to defendant with K.B. as the real party in interest, pursuant to Rule 4:26-1.

was the beneficiary of any life insurance policy or asset in defendant's estate.

In the alternative, plaintiff argued that if the Guidelines applied, then he should receive a credit "for 156 overnights per year" based on his increased parenting time since defendant's death. Plaintiff asserted that the increased parenting time constituted "a change of circumstances," justifying a modification.

K.B. disputed plaintiff's contention that the Guidelines did not apply because S.R., then twenty-four years old, was "non-verbal and [had] behavioral issues and cognitive limitations that will require him to receive care the rest of his life." According to K.B., unlike "an unemancipated college student who lives on campus or away from his custodial parent's home," S.R. "will never be emancipated or live away from home," rendering N.J.S.A. 2A:34-23 inapplicable. K.B. further asserted the new law did not apply because it did not go into effect until February 1, 2017, and, in any event, would not apply to S.R. because he was disabled prior to reaching the age of nineteen and required continued support.

K.B. also disputed plaintiff's claim of increased parenting time since defendant's death, certifying that plaintiff had not had any overnight visits with S.R. since December 2016, when S.R. returned home with a black eye after being in plaintiff's care,

7

and S.R.'s caregivers determined "that [p]laintiff should only be allowed supervised parenting time." K.B. asserted plaintiff's motion was really yet another motion for reconsideration of the May 27, 2016 order.

On January 6, 2017, after oral argument, the court granted K.B.'s motion to compel the sale of plaintiff's Brick home "to satisfy [p]laintiff's child support arrears" and awarded K.B. "sole authority to list, market, negotiate, [and] sell the property, and execute all [necessary] documents." After determining the Rule 5:3-5(c) factors predominantly "weigh[ed] in [d]efendant's favor," the court awarded K.B. counsel fees because, despite the absence of bad faith, the "fees were incurred in part to enforce a previous [c]ourt order" for which K.B. "should not solely bear the cost." Additionally, according to the judge, counsel's "[c]ertification of [s]ervices [was] reasonable."

In rejecting plaintiff's argument that N.J.S.A. 2A:34-23 applied instead of the Guidelines, the court determined that S.R. attended a special needs school, which constituted "'other' secondary education" under the Guidelines. The court ruled further that N.J.S.A. 2A:17-56.67 did not apply because the law became effective in February 2017, subsequent to plaintiff's application. Additionally, the court concluded that "even under the new law [S.R.] would be entitled to continued child support" because of

the law's special provision for children with preexisting physical or mental disabilities requiring continued support. Finally, the judge rejected plaintiff's request for a modification based on changed circumstances, finding that plaintiff failed to meet his burden of proof based on K.B.'s undisputed claim that plaintiff no longer exercised overnight parenting time following the physical abuse incident.

When defendant died on September 20, 2016, Probation placed a hold on defendant's child support account, pending closure. K.B. filed a motion, seeking continued weekly child support from plaintiff, her designation as the beneficiary on the Probation account, and Probation's enforcement of any child support arrears accumulating since defendant's death. In support, K.B. certified that, as the sole caretaker of S.R., she required child support to meet his needs because his Social Security Income (SSI) was insufficient.

In opposition, plaintiff asserted that the Guidelines did not apply to children over the age of eighteen, and K.B. had refused to supply him with documentation regarding the income and expenses associated with S.R. to establish a support figure. He averred that since defendant's death, S.R.'s social security benefit increased from $362.48 to $1879 per month. In addition, he certified that S.R. had a part-time job, earning minimum wage. He

argued that without information concerning state and federal aid received by S.R. for schooling and other needs, any life insurance proceeds or death benefits S.R. received when defendant died, or the balance of a special needs trust established in S.R.'s name, there was no way to justify the claim that S.R.'s needs were not being met. Plaintiff asserted that the requested information may reveal a change of circumstances occasioned by defendant's death and resulting increase in S.R.'s social security benefit, warranting a modification of child support.

In reply, K.B. urged the court to deny plaintiff's request as resolved or moot. K.B. certified that she had already provided proof from Social Security Administration, evidencing S.R.'s increased monthly benefit amount. According to K.B., S.R.'s only additional government benefit was Medicaid, which paid for his school that he had attended since he was a young child. She averred further that there were no bank statements for S.R.'s special needs trust because no bank account was ever opened in conjunction with the creation of the trust.

On February 10, 2017, after oral argument, the court determined that pursuant to N.J.S.A. 2A:17-56.67(b), as of February 1, 2017, the effective date of the statute, child support could no longer be collected for S.R. through Probation because he was over twenty-three years of age. As a result, Probation

could only collect and enforce arrears. However, the judge ordered plaintiff to pay a financial maintenance award of $264 per week directly to K.B. for S.R.'s ongoing care as permitted by N.J.S.A. 2A:17-56.67(e). Further, the judge ordered Probation to designate K.B. as the obligee on the child support account in order to collect and enforce arrears from September 2016 to February 1, 2017.

As to plaintiff's request for information, the court noted that while defendant's death would constitute a changed circumstance entitling him to the information, plaintiff did not dispute K.B.'s certification that she had provided the information and did not point to any other specific omitted documentation. Accordingly, the court denied plaintiff's request as moot.

Prior to the entry of the February 10, 2017 order, plaintiff moved for reconsideration of the provisions of the January 6, 2017 order compelling the sale of his Brick house, denying modification of child support, and awarding counsel fees. Additionally, plaintiff moved for a modification of his child support obligation based upon the new law as well as a substantial change of circumstances, including S.R.'s receipt of Social Security Disability (SSD) benefits. Plaintiff also requested any support obligation be deemed as financial maintenance in accordance with the new law. Further, plaintiff sought an order compelling K.B.

to provide a CIS as it related to S.R.'s needs and monthly expenses, all documents regarding defendant's Last Will and Testament as it related to whether S.R. was a beneficiary of any life insurance policy or other assets of defendant's estate, and all federal and state financial aid documents evidencing S.R.'s receipt of benefits.

In support of the motion, as to counsel fees, plaintiff certified that he had no ability to pay legal fees. As to child support, plaintiff certified the judge failed to address the fact that S.R. was receiving $1879 per month in SSD, rather than the $362.48 monthly SSI he received before defendant's death, and the SSD was never included in the child support calculation. Plaintiff averred further that the court failed to consider whether S.R. received any life insurance proceeds or other assets as a result of defendant's death that may have defrayed his expenses. Plaintiff also stated that because of the new law, his payments could no longer be considered child support payable through Probation but rather, financial maintenance.

K.B. objected to the motion and cross-moved for other relief, including an award of counsel fees in connection with the underlying motion. To support her cross-motion, K.B. certified that plaintiff paid neither the $3327.50 nor $3200 in counsel fees awarded in the January 6, 2017 and May 27, 2016 orders,

respectively. She asserted that plaintiff continued to act in bad faith by filing "frivolous [m]otions that [had] already been adjudicated" and "meritless requests for reconsideration."

Additionally, K.B. asserted that plaintiff's contentions regarding child support were moot because the judge had already considered S.R.'s $1879 SSD benefit and converted child support to financial maintenance in the February 10, 2017 order. Moreover, K.B. averred that plaintiff failed to show changed circumstances to warrant a modification, failed to provide a complete and updated CIS, and misrepresented his income.

On March 24, 2017, after oral argument, the court denied all but one of plaintiff's applications. As to the prior counsel fee awards, the court determined that plaintiff failed to allege that the court erred or failed to consider probative or competent evidence as required by Rule 4:49-2. In awarding K.B. additional counsel fees for the underlying motion, the court explained that plaintiff's claim that he lacked the financial ability to pay counsel fees was not a consideration because "[p]laintiff [had] acted exclusively in bad faith" by failing to comply with virtually every court order, including his failure to pay child support, obtain life insurance, and cooperate with the sale of his Brick home.

Moreover, according to the court, K.B. had "incurred substantial legal fees in connection with this matter," her fees "were incurred in part to enforce a previous [c]ourt [o]rder," and she had been "more successful" than plaintiff in obtaining the relief sought. Applying the Rule 5:3-5(c) factors,[3] the court found that factors three, four, five, seven, and eight weighed in K.B.'s favor; factors one, two, and six did not support an award of fees; and factor nine had no weight. Therefore, the court concluded, "the factor[s] that . . . favor[ed] an award outweigh[ed] the ones that [did] not." After scrutinizing K.B.'s counsel's certification of services in accordance with Chestone v. Chestone, 322 N.J. Super. 250 (App. Div. 1999), the court

---

[3] Under Rule 5:3-5(c), a court should consider the following factors when determining a counsel fee award:

> (1) [T]he financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

reduced the requested amount to the "compensable" fees and awarded $2020.75, which was reduced to a judgment.

As to child support, the court denied plaintiff's request to reconsider the prior ruling applying the Guidelines to calculate child support instead of the factors set forth in N.J.S.A. 2A:34-23. The court determined that "[p]laintiff [had] not advanced any new argument why the . . . Guidelines should not apply, nor [had] he alleged the [c]ourt erred in the January 6, 2017 [o]rder."

Turning to plaintiff's request to modify the child support obligation based on changed circumstances, the court noted that "[p]laintiff's application lack[ed] his prior CIS as required by [Rule 5:5-4(a)], and this alone would be a basis to deny the application." "Setting [that] aside," the court determined that a "substantial increase" in S.R.'s social security benefit "constitute[d] a substantial change in circumstances warranting modification of child support."

However, after applying the Guidelines, the court found that "[p]laintiff's new financial maintenance obligation would be $568 per week, because neither [d]efendant's income nor [S.R.'s] SSI benefits [could] be factored into the . . . Guidelines." Thus, plaintiff's obligation under the Guidelines "would more than double his [existing] obligation." The court noted further that "whether [S.R.'s] income [was] SSD or SSI, it [did] not appear to

15                                        A-3748-16T1

work a downward modification of child support in [plaintiff's] favor."

Acknowledging that "the [c]ourt may deviate or disregard the Guidelines where it finds good cause to do so" and to avoid "an injustice," the court determined that deviation from the Guidelines was warranted to avoid "an unjust result." Accordingly, the court denied plaintiff's request and ordered him to continue to pay $264 per week as financial maintenance directly to K.B. Relying on the February 10, 2017 order, the court denied "as moot" plaintiff's request that the court "deem[] any future support payments as financial maintenance" in accordance with the new law, N.J.S.A. 2A:17-56.67.

The court also denied plaintiff's request that the court order K.B. to provide a CIS "listing [S.R.'s] needs and monthly expenses," noting that a CIS was not necessary because S.R.'s needs were taken into account when child support was calculated with the Guidelines. Moreover, according to the court, a CIS "would only be relevant for purposes of income[,] and [defendant] [was] deceased and no longer [had] an income."

As to plaintiff's request for documents regarding "all financial aid both federal and state that [K.B.] [was] receiving on behalf of [S.R.]," relying on the February 10, 2017 order, the court found that K.B. had "already produced all documents that

exist[ed]," and plaintiff had "not advanced any new argument or provided any objective proof" disputing K.B.'s claim. However, over K.B.'s objection, the court determined that plaintiff was entitled to "a copy of [defendant's] Last Will and Testament and her life insurance policy, or a [c]ertification memorializing the fact that they [did] not [exist]" to determine whether S.R. received "significant funds" to render him "independently self-supporting" and obviate the need for child support. The judge entered a conforming order, and this appeal followed.

On appeal, plaintiff raises the following points for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING . . . PLAINTIFF'S REQUEST TO MODIFY HIS CHILD SUPPORT OBLIGATION BASED UPON [S.R.] RECEIVING [SSD] WHICH CONSTITUTED A SUBSTANTIAL CHANGE OF CIRCUMSTANCES AND WARRANTED A PERIOD OF DISCOVERY AND [RECALCULATION] OF SUPPORT.
>
> POINT II
>
> THE TRIAL COURT ERRED IN DENYING . . . PLAINTIFF'S REQUEST TO RECONSIDER, VACATE, OR MODIFY HIS CHILD SUPPORT OBLIGATION SET FORTH IN THE MAY 27, 2016 ORDER, BASED UPON THE . . . GUIDELINES NO LONGER APPLYING GIVEN THE AGE OF THE PARTIES['] SON BEING [TWENTY-FOUR], THE NEW LAW IN THE STATE OF NEW JERSEY AS IT RELATES TO CHILD SUPPORT, AND BASED UPON THE FACTORS OF N.J.S.A. 2A:34—23.

POINT III

THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S REQUEST TO MODIFY HIS CHILD SUPPORT OBLIGATION BASED UPON THE MOST RECENT LAW REGARDING CHILD SUPPORT IN THE STATE OF NEW JERSEY UNDER [N.J.S.A. 2A:56.67] AND BASED UPON SAME SHOULD HAVE TERMINATED THE APPROPRIATE FINANCE MAINTENANCE FOR [S.R.].

POINT IV

THE TRIAL COURT ERRED IN AWARDING ADDITIONAL ATTORNEY FEES TO . . . DEFENDANT AS THE TRIAL COURT DID NOT TAKE INTO CONSIDERATION ALL THE FACTORS SET FORTH UNDER RULE 5:3-5(C) AND FURTHER DETERMINED BAD FAITH ON . . . [PLAINTIFF] WHEN SAME DID NOT EXIST AS WELL AS LACKED INFORMATION TO MAKE A PROPER COUNSEL FEE DETERMINATION.

Clear standards guide our limited review. "We 'do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 213 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invr's Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Also, '[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding.'" Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Accordingly, when a reviewing court concludes there is

satisfactory evidentiary support for the trial court's findings, 'its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal.'"  Id. at 213-14 (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)).

However, we confer no special deference upon a trial court's interpretation of the law, which is subject to plenary review. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  We may also exercise more extensive review of trial court findings that do not involve a testimonial hearing or the opportunity to assess witness credibility.  Cf. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (stating that deference to Family Court conclusions is not required where "no hearing takes place, no evidence is admitted, and no findings of fact are made").  Nevertheless, "[r]eversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'"  Llewelyn, 440 N.J. Super. at 214 (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

Furthermore, when a trial court denies a party's motion for reconsideration, we overturn the denial only in the event the trial court abused its discretion.  See Marinelli v. Mitts &

Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997). In determining whether such an abuse has taken place, we are mindful that a party should not utilize reconsideration just because of "dissatisfaction with a decision of the [c]ourt." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (alteration in original) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Rather, trial courts should grant motions for reconsideration "only under very narrow circumstances." Fusco v. Bd. of Educ., 349 N.J. Super. 455, 462 (App. Div. 2002). Such circumstances arise when "either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria, 242 N.J. Super. at 401); see also R. 4:49-2.

Turning to the legal principles applicable to child support awards, in determining child support, "the trial court has substantial discretion." Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008). "When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v.

Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "The trial court's 'award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 326 (quoting Jacoby, 427 N.J. Super. at 116).

The gravamen of plaintiff's contention is that the court erred by relying on the Guidelines and not applying N.J.S.A. 2A:17-56.67 to his application. According to plaintiff, N.J.S.A. 2A:17-56.67 terminated his child support obligation by operation of law because S.R. was over twenty-three years old, and any future payments would be deemed financial maintenance, which the court should have calculated using the factors enunciated in N.J.S.A. 2A:34-23, none of which were considered by the court. "[G]iven the fact that [S.R.] [was] [twenty-four] years of age, . . . receiving [SSD], working part-time, attend[ing] a school . . . paid for through either [f]ederal or [s]tate aid and it [was] completely unknown what his exact expenses [were] and what specific [f]ederal and state aid [S.R.] [was] receiving," plaintiff urges us to vacate the trial court's order and remand the matter "for a period of discovery as well as an analysis of [S.R.'s] needs to determine a proper financial maintenance obligation."

21

N.J.S.A. 2A:17-56.67, which became effective on February 1, 2017, provides that, generally, "a child support obligation shall terminate by operation of law without order by the court when a child reaches [nineteen] years of age." N.J.S.A. 2A:17-56.67(a). However, if "the child has a physical or mental disability . . . that existed prior to the child reaching the age of [nineteen] and requires continued child support," the child's custodial parent "may submit a written request . . . seeking the continuation of child support beyond the date the child reaches [nineteen] years of age." N.J.S.A. 2A:17-56.67(b)(1).

"Notwithstanding the provisions of this section, the obligation to pay child support shall terminate by operation of law when a child reaches [twenty-three] years of age," unless "upon application of a parent," the court converts "a child support obligation to another form of financial maintenance for a child who has reached the age of [twenty-three]" "due to exceptional circumstances including, . . . a mental or physical disability." N.J.S.A. 2A:17-56.67(e). Pursuant to N.J.S.A. 2A:34-23,

> The obligation to pay support for a child who has not been emancipated by the court shall not terminate solely on the basis of the child's age if the child suffers from a severe mental or physical incapacity that causes the child to be financially dependent on a parent. The obligation to pay support for that child shall continue until the court finds that the

child is relieved of the incapacity or is no longer financially dependent on the parent.

However, in assessing the parent's financial obligation for a child who suffers from a severe mental or physical incapacity, the court shall consider the following factors:

(1) Needs of the child;

(2) Standard of living and economic circumstances of each parent;

(3) All sources of income and assets of each parent;

(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

23

Additionally, "the court shall consider . . . the child's eligibility for public benefits and services for people with disabilities and may make such orders, including an order involving the creation of a trust, as are necessary to promote the well-being of the child." Ibid.

Here, the court correctly determined in the January 6, 2017 order that N.J.S.A. 2A:17-56.67 did not apply to plaintiff's application because the law did not become effective until February 1, 2017. The court further determined that "even under [N.J.S.A. 2A:17-56.67] [S.R.] would be entitled to continued child support" under the provision for continued support for children with physical or mental disabilities that existed prior to the age of nineteen. On plaintiff's motion to reconsider that order, the court denied the motion, finding no error in the ruling. As to that finding, we discern no abuse of discretion and affirm that provision of the March 24, 2017 order.

However, in denying plaintiff's new modification request, in its March 24, 2017 order, the court incorporated its prior conclusions regarding the new law, without further analysis, and denied plaintiff's request, reasoning that plaintiff's obligation under the Guidelines would be higher than his existing obligation. The court also noted that its February 10, 2017 order had already

24

converted the weekly child support payment to financial maintenance payments payable directly to K.B. in accordance with N.J.S.A. 2A:17-56.67. However, the court simply adopted the award previously calculated with the Guidelines, rather than recalculating a financial maintenance obligation utilizing the N.J.S.A. 2A:34-23 factors, including S.R.'s eligibility for public benefits and services for people with disabilities. In so doing, we agree with plaintiff that the court erred, and we reverse that provision of the order and remand to the trial court for consideration of the N.J.S.A. 2A:34-23 factors. In light of our decision, we need not address plaintiff's other contentions relating to the child support award.

Turning to plaintiff's challenge to the trial court's award of counsel fees, "[w]e will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Here, we find no clear abuse of discretion and uphold the court's counsel fee award substantially for the reasons set forth in the court's statement of reasons, which analyzed all of the factors under Rule 5:3-5(c). Although our decision affords plaintiff limited relief, it does not

overshadow the court's finding of "bad faith" on plaintiff's part by failing to comply with virtually every court order.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION