**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0732-17T2

J.L.,

    Plaintiff-Appellant,

v.

S.P.L.,

    Defendant-Respondent.

_____

Argued telephonically February 13, 2019 –
Decided April 29, 2019

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1428-97.

Andrew L. Rochester argued the cause for appellant (Morgenstern & Rochester, LLC, attorneys; Andrew L. Rochester, on the brief).

D. Ryan Nussey argued the cause for respondent (Klineburger and Nussey, attorneys; D. Ryan Nussey and Carolyn G. Labin, on the brief).

PER CURIAM

Plaintiff J.L.[1] appeals portions of three Family Part orders that modified his payment of child support and required him to pay higher education costs and expenses for his daughter. We affirm the orders except for the award of attorney's fees, which we vacate.

Plaintiff and defendant S.P.L. were married from 1994 until their divorce in 1999 and had one child, Kim.[2] Plaintiff remarried and has two other minor children. Kim was attending college when the orders subject to this appeal were entered.

Their final judgment of divorce incorporated a marital settlement agreement (MSA). Under the MSA, defendant was Kim's parent of primary residence. Plaintiff agreed to pay defendant $2000 per month in child support. Both parties agreed to contribute $100 per month to a tuition fund (CMA account) that was registered to defendant under the Uniform Gifts to Minors Act for the benefit of Kim. Plaintiff agreed "to pay for any college tuition for the child which is in excess of the funds contained in the tuition fund." Plaintiff and defendant agreed to "confer and consult on all extra-curricular activities for the

---

[1] We have used abbreviations for J.L. and for defendant, S.P.L, to maintain privacy.

[2] This is a fictitious name to protect her privacy.

2

child" and to "agree before incurring the cost of such activities." The MSA provided that "[u]pon agreement, [plaintiff] shall pay [seventy-five percent] of the costs, and [defendant] shall bear the remaining [twenty-five percent]." The same percentages applied to the payment of Kim's medical and dental expenses that were not covered by insurance after defendant paid the first $250.

When they divorced, plaintiff was earning $75,000 and defendant $39,000 per year. Their incomes increased after that. In 2015, defendant's income was $196,602, consisting of an annual salary of $133,000 and bonuses; in 2016 it was $180,099 with a base salary of $140,000 and bonuses. Plaintiff obtained an executive MBA from Cornell. His earnings in 2011 were $300,000 as the chief financial officer of a corporation.

In December 2011, plaintiff attempted suicide that caused him facial disfigurement. He claimed he had difficulty finding employment after that. His earnings history reflected decreases: $185,075[3] in 2012; $67,514 in 2013; $144,177 in 2014; and $127,812 in 2015. When these motions were filed, plaintiff was employed with a company earning $83,414 per year. He claimed he had large medical debts and needed additional surgery that he could not afford. Plaintiff and his family have since moved to Scottsdale, Arizona.

---

[3] His total income was $365,995 because it included significant capital gains.

Kim maintained an "A" average in a competitive public high school and, with the encouragement of plaintiff, applied to a range of colleges and universities in the spring of 2015, including her first choice, Boston University (BU). Plaintiff suggested she apply to schools such as Harvard, Columbia, Penn, Vanderbilt, and BU. He acknowledged this, but said it was with the "caveat" that Kim would need "significant scholarship monies" for the more expensive schools.

Kim was accepted by BU, which did not offer her financial aid, and by Arizona State University (ASU) in its honors program, with the promise of financial aid. There was a significant difference in their costs: Kim could obtain an in-state tuition rate at ASU while tuition at BU was $67,000 annually. When plaintiff balked at paying for BU, Kim attended ASU for the first semester, which was paid for from the CMA account. She was not satisfied with ASU and transferred to BU in the 2016 spring semester.[4] Plaintiff claimed this decision was made without his knowledge, although defendant argued she notified plaintiff that Kim was committing to BU.

In March 2015, plaintiff filed a motion to reduce child support based on changed circumstances. He wanted an accounting of the CMA account because

---

[4] At oral argument, we were advised she will be graduating in May 2019.

4

he alleged defendant had not contributed as required, and requested an order for her to remit past-due payments and lost investment gains. He requested modification of the MSA to adjust his payment for college tuition and expenses based on changed circumstances, and of the amount he was to pay for extracurricular, medical and dental expenses. Defendant's cross-motion requested enforcement to require plaintiff to pay for Kim's college tuition and expenses that were more than what the CMA account could pay, and for him to reimburse her for his portion of extracurricular and medical expenses.

The court's June 12, 2015 order directed the parties to conduct discovery for forty-five days and attend economic mediation if they could not resolve the issues.[5] In December 2015, the parties consented to reduce plaintiff's child support obligation to $1000 per month effective September 1, 2015, and to use the CMA account to pay for Kim's education and travel costs.[6]

In July 2016, defendant filed a motion for partial summary judgment, asking for reimbursement of the college tuition and expenses she paid, payment by plaintiff of child support arrears, and his portion of Kim's medical, dental and extracurricular expenses. Plaintiff opposed. The court's August 19, 2016 order

---

[5] This order was not appealed.

[6] The December 2015 consent order was not appealed.

denied relief, finding there were genuine issues of material fact about "enforceability of the college contribution obligation" in the MSA.

The parties agreed to waive a plenary hearing about these issues and to proceed based on their detailed certifications, exhibits and oral arguments. The parties filed additional certifications, exhibits and case information statements (CIS). Both sides retained accountants to determine the impact on the CMA account of contributions that defendant had not made and their reports were submitted to the court.

Plaintiff argued he could not pay for Kim's college tuition and expenses because his suicide attempt affected his employability and income. He claimed defendant still owed $11,331.32 to the CMA account. His CIS showed assets of $601,001 but a net worth of half this. He contended defendant was better able to pay for Kim's college, he did not have the money and it was "ludicrous and impossible" to get loans.

Defendant argued plaintiff was involved in Kim's college selection process but never raised an issue about the costs until the last moment. Defendant certified she paid $78,741.78 out of pocket for BU's tuition and costs, over and above the $70,405 that was paid from the CMA account. Her accountant reported she overpaid the CMA account by $5083. Defendant

requested reimbursement for seventy-five percent of Kim's medical and extracurricular expenses. She claimed she sold her home to pay for Kim's college, although she had a second home at the shore. Defendant recounted the "high-level, high-paying positions" plaintiff had held and that she had relied on his agreement in the MSA to pay for college in excess of the CMA account because plaintiff "had earned large salaries for many years." Defendant certified that Kim's relationship with her father deteriorated because of the litigation.

In the court's June 2, 2017 oral opinion, it found there had been a substantial change in circumstances that warranted a review of the MSA's child support and college contribution provisions. Kim was in college, the parties incomes had fluctuated, plaintiff was remarried, and had other children. The court found defendant had a salary of approximately $200,000 with bonuses. Defendant's net worth was $1,500,000, which included real estate and a 401(k). Her CIS overstated expenses in a few areas but "not of any great significance."

Plaintiff's income had been $300,000 annually with other perquisites consistent with that employment. His CIS expenses were "consistent with that level of income." Plaintiff had "regular decreases" in earnings since then, falling to $135,000 in 2015. The court found the CIS showed he was then earning $83,000. The court found no proof plaintiff took any action to prepare for his

A-0732-17T2

obligation to pay Kim's tuition and expenses other than what he paid monthly to the CMA account.

The court found plaintiff's "lifestyle was compromised because of the tragic situation leading up to his suicide attempt," but he had not provided a vocational analysis. The court expressly considered that plaintiff had a second family and two other children. His CIS did not list any expenses for Kim. The court found he "greatly exaggerated" many items in his monthly budget. The CIS reflected certain assets that could be used to pay for some of Kim's college education but that plaintiff "made the unilateral decision not to do so." There was no information about his current wife's income. The court imputed an income to plaintiff of $140,000 annually. Given defendant's income of $200,000, the court noted that plaintiff had forty-one percent and defendant had fifty-nine percent of the income.

The court considered the selection process regarding BU and its costs. The court found that both parties agreed with Kim's choice of BU, but plaintiff changed his position at the "eleventh hour" saying he could not afford it. Kim "reluctantly" attended ASU, but when she was not satisfied there, she transferred to BU without plaintiff's specific agreement. The court detailed the $70,405 in expenses that had been paid from the CMA account and found that another

$78,743 had been paid by defendant out of pocket for room and board, tuition and expenses.

The court considered the need for child support in addition to college related expenses as required by Jacoby v. Jacoby, 427 N.J. Super. 109 (App. Div. 2012). The court reviewed the "plethora of lists, and documents, and schedules" and analyzed them in detail, revealing that some expenses were "put on several different lists." The court reviewed the parties' accounting reports about the CMA account. The accountants used different analyses to come to different conclusions that could not be reconciled.

Regarding defendant's $78,743 in out-of-pocket costs, the court considered plaintiff's arguments, gave him credits reflective of the issues he raised, and reduced defendant's out-of-pocket costs to $60,243. The court determined that plaintiff was responsible to pay sixty-five percent of this net amount, or $39,158. For future tuition and other college expenses, the court held that Kim's required contribution would be minimal in light of "a lot of reliance" on plaintiff's promise in the MSA to pay and his last minute change of position. It applied the same sixty-five percent for future costs and expenses, requiring the parties "to make whatever payment arrangements that they deem appropriate" with BU. The court rejected plaintiff's argument that his

responsibility to pay for Kim's college tuition and expenses had to be reduced to a level such that he could pay this from his current net earnings, noting that plaintiff had not applied for loans under the Parents Plus program. The court reduced plaintiff's child support obligation from $1000 per month to $500 per month effective September 2015 ($115 per week) and calculated the amount of arrears.

The court carefully reviewed the medical expenses that defendant claimed she paid for Kim, and gave plaintiff credits for some of the items. It applied the same level of intensive review to the list of extracurricular expenses and reduced them. The court required plaintiff to pay seventy-five percent of these per the MSA, although for future expenses, plaintiff would be responsible for sixty-five percent.

The court ordered plaintiff to pay the past due amounts owed though a wage garnishment of $390 per week, which included $115 per week for child support. The court ordered the parties to submit attorney fee certifications to support their requests for attorney's fees.

The court's June 30, 2017 order summarized the oral opinion: plaintiff owed a total of $67,000 to defendant comprised of $39,158 in past due college expenses, $20,000 in child support arrears and $8642 for medical and

A-0732-17T2

extracurricular expenses. Plaintiff was responsible for sixty-five percent of Kim's college tuition and expenses in the future, for child support of $115 per week and to repay the past due amounts by wage garnishment.

Plaintiff filed a motion for reconsideration, arguing the court's order imposed an obligation that exceeded his net earnings. He alleged he did not owe any child support arrears. He objected to the court's imputation of income because he only earned $83,000 annually. He presented a vocational analysis report for the first time that said his earning capacity was $70,000 to $100,000 per year. Plaintiff asked the court to recalculate child support using his actual salary and to base his percentage share of college expenses, medical and extracurricular expenses on his actual salary in relation to defendant's. He requested a credit for payments he made for Kim's cell phone and for the years he could not declare Kim as a tax deduction. Defendant's cross-motion requested enforcement of the prior order, payment of Kim's medical and extracurricular expenses incurred since that order, and payment of her rent and food bills on a monthly basis.

The court's September 22, 2017 order modified the June 30, 2017 order to eliminate plaintiff's child support arrears. However, it declined to adjust the imputed income, to accept the vocational report about plaintiff's earnings

11

capacity, or to award any other credits to defendant because plaintiff did not meet the standards for reconsideration. The September 2017 order reduced the judgment to reflect elimination of the child support arrears. Plaintiff was required to implement a wage garnishment.

The court also required plaintiff to pay $6927.54, which was sixty-five percent of Kim's college room and board expenses since June 2, 2017. He was ordered to pay $1118 monthly, comprised of $715 for room and board and $403 for food, which was sixty-five percent of these expenses on an on-going basis. Counsel fees were denied "at this time." On October 18, 2017, the court entered an order awarding defendant $8500 in attorney's fees and costs, and denied plaintiff's requests for fees.

Plaintiff appeals portions of the June 30, 2017, September 22, 2017 and October 18, 2017 orders. He contends the trial court erred by: imputing income; apportioning expenses between the parties; failing to consider his other two children; failing to address his ability to pay all of the amounts; not considering the vocational analysis; and assessing attorney's fees once the notice of appeal was filed.[7]

---

[7] Defendant withdrew her cross-appeal.

A-0732-17T2

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff contends the court erred in apportioning sixty-five percent of Kim's college tuition and other expenses to him when he earned forty-one percent of the income, based on the imputed income, or twenty-nine percent based on his actual earnings. He contends the court did not consider applicable cases such as Newburgh[8] and Jacoby.[9] Plaintiff argues the court did not determine whether he had the ability to pay for BU, consider that his daughter did not consult with him before transferring to BU, take into consideration that defendant has superior financial resources, explore other options for college that

---

[8] Newburgh v. Arrigo, 88 N.J. 529 (1982).

[9] Jacoby, 427 N.J. Super. at 109.

A-0732-17T2

were more affordable or take into account the expenses for his other two children.

We review orders modifying child support for abuse of discretion. Jacoby, 427 N.J. Super. at 116. "If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Ibid. (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)).

The Family Part's discretion to determine child support "applies equally to compelling a parent to contribute to their child's college costs." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (citing Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008)). "We must accept the Family Part's determination concerning a parent's obligation to contribute toward college tuition, provided the factual findings are supported by substantial credible evidence in the record and the judge has not abused his or her discretion." Ibid. (citing Gac v. Gac, 186 N.J. 535, 547 (2006)).

In Newburgh, the Court provided that "[i]n general, financially capable parents should contribute to the higher education of children who are qualified students." 88 N.J. at 544. This includes tuition and other expenses associated with college. See Guglielmo v. Guglielmo, 253 N.J. Super. 531, 548-49 (App.

Div. 1992). <u>Newburgh</u> required an examination of "all relevant factors" in "evaluating the claim for contribution toward the cost of higher education," and listed twelve factors. 88 N.J. at 545. "Generally, consideration of the <u>Newburgh</u> factors to establish the parental responsibility for higher education expenses is not appropriate if the parents have entered into an agreement providing for a greater benefit to the child." Fall & Romanowski, <u>Child Custody, Protection & Support</u> § 34:3-1(b) (2018). In that circumstance, the MSA would govern the parties' responsibilities and the court would not need to apply the twelve factors. <u>Avelino-Catabran</u>, 445 N.J. Super. at 591.

Plaintiff and defendant agreed in the MSA that they would contribute to the CMA account and plaintiff would pay all of Kim's college tuition that the CMA did not pay. However, the Family Part judge found changed circumstances and ordered a modification of the MSA's child support and college expense provisions. We agree there were changed circumstances in light of Kim living away at college. <u>Jacoby</u>, 427 N.J. Super. at 118.

Plaintiff did not request application of the <u>Newburgh</u> factors in his motions and claims now the court erred by not examining those factors. Even if his position throughout the litigation did not constitute a waiver, we reject plaintiff's argument because the court took many of the <u>Newburgh</u> factors into

15

consideration including the amount of the contribution sought, the ability of the parents to pay based on their income and resources, the type of school attended and costs, the financial resources of the parties, and financial aid. 88 N.J. at 545. The parties submitted detailed certifications and exhibits. The court's oral decision reflected its careful consideration of this information and their arguments. It balanced these competing arguments and made factual findings that supported its conclusions and were supported by the record. In this circumstance, we find no error by the Family Part court that was "clearly capable of producing an unjust result." R. 2:10-2.

We review for abuse of discretion the court's determination to require plaintiff to pay sixty-five percent of Kim's college expenses. Foust, 340 N.J. Super. at 315-16. We reject plaintiff's argument that the court erred by not requiring him to pay twenty-nine percent based on his actual salary.

The court was not required to apportion expenses with mathematical precision. It considered other facts in its decision: plaintiff agreed in the MSA to pay all of Kim's college after funds from the CMA account were applied; defendant relied on this; plaintiff changed his position at the last minute; plaintiff's income may have been affected by his health, but he historically had earned significant income; his current family obligations and children; and his

16

obligation to Kim. The court recognized that Kim's college expenses could not be paid from income alone. Plaintiff acknowledged he did not apply for any loans and had not saved for this obligation. The court considered plaintiff's CIS, expenses and assets, his past earnings, lifestyle, education and resume. After our careful review of the record, we discern no abuse of discretion in the court's order to require plaintiff to pay sixty-five percent of Kim's college tuition and expenses at issue.

The court reduced plaintiff's child support obligation to $500 per month. We reject defendant's argument that it was an abuse of discretion to require him to continue to pay child support. The court was required by Jacoby to consider plaintiff's child support. 427 N.J. Super at 121 ("The payment of college costs differs from the payment of child support for a college student."). The child support guidelines were no longer applicable when "setting child support for college students living away from home." Id. at 113. Defendant's Schedule C expenses alone were $8457 per month for defendant and Kim that did not include shelter or transportation. The court found these expenses were not overstated to any significance. Thus, defendant's CIS supported the court's determination to continue to require plaintiff to pay child support in the amount ordered.

A-0732-17T2

Contrary to plaintiff's argument, the Family Part judge did consider plaintiff's other family obligations, expressly referencing his children on several occasions. We have no doubt that concern factored into the court's order because the judgment against plaintiff was to be paid back by wage garnishment at a modest weekly amount.

We need only briefly address plaintiff's other arguments. There was no error in the court's decision to impute income to plaintiff. Imputation of income is a decision left to the sound discretion of the trial court that is "not capable of precise or exact determination[,] but rather require[s] a trial judge to realistically appraise capacity to earn and job availability." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (alterations in original) (quoting Gnall v. Gnall, 432 N.J. Super. 129, 158 (App. Div. 2013), rev'd on other grounds, 222 N.J. 414 (2015)).

The court considered plaintiff's CIS, certifications, exhibits, past work experience, education and arguments in imputing an income near what he was earning in 2015, which was after his suicide attempt. We discern no abuse of the court's discretion to impute income at the amount ordered.

Plaintiff's vocational analysis was not submitted until after the court ruled in June 2017. By that time, the case had been pending for two years. Defendant

had no opportunity to rebut the report because it was submitted in plaintiff's motion for reconsideration. The court correctly held that submission of the report was not a basis for reconsideration. See D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (providing reconsideration is not permitted where new information could have been brought to the court's attention in the first application).

We agree with plaintiff that the October 18, 2017 order awarding attorney's fees must be vacated. The court denied both parties' requests for fees "at this time" in its September 22, 2017 order. Plaintiff filed a notice of appeal shortly after. On October 18, 2017, the court issued another order, this time granting defendant's request for attorney's fees against plaintiff. The record does not reveal why the court readdressed the fee issue, the court did not provide findings of fact or conclusions of law for the award contrary to Rule 1:7-4(a). Because plaintiff filed a notice of appeal before the October 18, 2017 fee order was entered, the trial court should have declined to address any further issue about attorney fee based on its lack of jurisdiction. See R. 2:9-1(a) (providing that from the time the appeal is taken, "supervision and control of the proceedings on appeal . . . shall be in the appellate court"). Thus, we are

constrained to vacate the October 18, 2017 order because the trial court lacked jurisdiction to enter it.

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiff's further arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

The June 30, 2017 and September 22, 2017 orders are affirmed.  The October 18, 2017 order is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION