47 A.3d 40

KATHLEEN A. JACOBY, PLAINTIFF–RESPONDENT, v.
FRANK C. JACOBY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 18, 2012—Decided July 11, 2012.

110

Before Judges LIHOTZ, WAUGH [1] and ST. JOHN.

*Allan Weinberg* argued the cause for appellant.

Respondent has not filed a brief.

The opinion of the court was delivered by

LIHOTZ, J.A.D.

We are asked to review whether child support should be reduced when a child resides on campus while attending college. We confirm the child's attendance at college is a change in circumstance warranting review of the child support amount. However, there is no presumption that a child's required financial support lessens because he or she attends college. As each case must turn on its own facts, courts faced with the question of setting child support for college students living away from home must assess all applicable facts and circumstances, weighing the factors set forth in *N.J.S.A.* 2A:34–23a. Resort to the Child Support Guidelines (Guidelines), *R.* 5:6A, to make support calculations for college students living away from home is error. Pressler & Verniero, *Current N.J. Court Rules,* Appendix IX–A to *R.* 5:6A at 2513–14 (2012). Here, the Family Part judge fixed support for the parties' college-aged children through the Guidelines' mechanism. Accordingly, we reverse and remand.

On August 17, 2001, plaintiff Kathleen A. Jacoby and defendant Frank C. Jacoby divorced after almost fifteen years of marriage. They resolved all issues collateral to the dissolution of their marriage, as reflected in a stipulation of settlement incorporated into the Amended Dual Final Judgment of Divorce.

Among the consensual provisions was an agreement to share joint legal custody of their two children, who principally resided with plaintiff. The parties also agreed defendant's only child

---

[1] Judge Waugh did not participate in oral argument. He joins the opinion with counsel's consent. *R.* 2:13–2(b).

support obligation would be his payment of the property tax and homeowner's insurance associated with the former marital home occupied by plaintiff and the children. Finally, the parties recognized the "children's right to attend college[,]" and, when the time arose, agreed to share that financial responsibility based on their respective incomes, after the exhaustion of available grants, loans, scholarships, and other financial aid.

On February 10, 2005, the parties modified defendant's child support obligation. Using plaintiff's yearly income of $43,240 and defendant's yearly income of $71,011, they calculated defendant's weekly child support obligation under the Guidelines as $215.

In the fall of 2007, the parties' older child matriculated at a college in West Virginia. Defendant moved to modify child support, arguing his obligation should be reduced because the child no longer resided in plaintiff's home. On November 21, 2007, the court granted the request and recomputed child support by employing a formula. Starting with the Guidelines, the judge first calculated the support for two, then one child. Taking the difference in these two sums, the judge determined 38% of the difference, and 25% of the calculated remainder. These two sums were added and set as the support necessary for the older child.[2] The total child support award was $170 per week for both children. Defendant was also ordered to pay $2,943.48 toward the older child's annual college costs.

In the fall of 2009, the younger child began attending college in Kentucky. On January 11, 2011, defendant moved for a reduction in child support, arguing his income had fallen from $75,000 to $50,000 per year. Also, he asserted the older child's expected

---

[2] The calculation entailed these steps:

Guidelines support for two children ($194) − Guidelines support for one child ($143) = $51.

$51 × .38 (representing the "fixed" guidelines support expenses) = $19.

$51 − $19 = $32.

$32 × .25 (representing the "controlled" guidelines support expenses) = $8.

$19 + $8 = $27 (new support amount).

May graduation date warranted an order of emancipation.[3] Finally, defendant requested recalculation of his child support obligation for the younger child because the child was away "at school ... in excess of [e]ighty-[f]ive ... percent of the year." Defendant asserted if the court used his 2011 income and applied the November 21, 2007 "established formula," his weekly child support obligation for the two children would be $99.

Plaintiff opposed defendant's request and filed a cross-motion seeking to increase defendant's weekly child support obligation to $258 and ordering payment of his share of the children's net college costs. Plaintiff stated the older child would not graduate until December 2011 or May 2012. She produced proof of her current $47,000 annual salary and argued defendant's claim of decreased income was unsupported.

A different Family Part judge assigned to the motion denied defendant's request to reduce his weekly child support obligation merely because the children lived away from home while attending college, but accepted his representation of changed financial circumstances. Utilizing the parties' current incomes, the judge recalculated child support under the Guidelines, and fixed defendant's obligation at $179 per week. Thereafter, at defendant's request, the order was amended to include the costs he paid for the children's medical insurance. The new obligation was $159 per week.

On appeal, defendant argues the motion judge erred in calculating his child support obligation because she declined to apply the November 21, 2007 order's formula, which he insists represents the "law of the case." Alternatively, he maintains the parties' acceptance of and compliance with this order was tantamount to an agreement on the calculation of support when a child lives away

---

[3] The parties' respective motions also sought enforcement of prior orders regarding equitable distribution and an award of counsel fees. Because these issues were not the subject of appeal, we confine our opinion to the challenged support provisions.

at college. Finally, he suggests the court should have conducted a plenary hearing to consider whether the parties accepted the application of the formula.

A party seeking modification of his or her child support obligation has the burden of demonstrating a change in circumstances warranting an adjustment. *Lepis v. Lepis,* 83 *N.J.* 139, 157, 416 *A.*2d 45 (1980). Any decision must be made in accordance with the best interests of the children. *See Caplan v. Caplan,* 182 *N.J.* 250, 266, 864 *A.*2d 1108 (2005); *Zazzo v. Zazzo,* 245 *N.J.Super.* 124, 129–30, 584 *A.*2d 281 (App.Div.1990), *certif. denied,* 126 *N.J.* 321, 598 *A.*2d 881 (1991).

When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion. *Larbig v. Larbig,* 384 *N.J.Super.* 17, 21, 894 *A.*2d 1 (App.Div.2006); *Loro v. Del Colliano,* 354 *N.J.Super.* 212, 220, 806 *A.*2d 799 (App.Div.), *certif. denied,* 174 *N.J.* 544, 810 *A.*2d 64 (2002). "The trial court has substantial discretion in making a child support award. If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." *Foust v. Glaser,* 340 *N.J.Super.* 312, 315–16, 774 *A.*2d 581 (App.Div.2001) (internal citations and quotation marks omitted). *Accord Tannen v. Tannen,* 416 *N.J.Super.* 248, 278, 3 *A.*3d 1229 (App.Div.2010), *aff'd,* 208 *N.J.* 409, 31 *A.*3d 621 (2011). "Of course, the exercise of this discretion is not limitless[,]" and remains guided by the law and principles of equity. *Steneken v. Steneken,* 367 *N.J.Super.* 427, 434, 843 *A.*2d 344 (App.Div.2004), *aff'd in part and modified in part,* 183 *N.J.* 290, 873 *A.*2d 501 (2005). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" *Flagg v. Essex Cnty. Prosecutor,* 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002) (quoting *Achacoso–Sanchez v. Immigration & Naturalization Serv.,* 779 *F.*2d 1260, 1265 (7th Cir. 1985)). Finally, we note we are not bound by "[a] trial court's

interpretation of the law" and do not defer to legal consequences drawn from established facts. *Manalapan Realty, L.P., v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

In this matter, we first address defendant's claim that support must be calculated using the November 21, 2007 formula, suggesting it serves as the law of the case. "Under the law-of-the-case doctrine, 'where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit[,]' " *Bahrle v. Exxon Corp.,* 279 *N.J.Super.* 5, 21, 652 *A.*2d 178 (App.Div.1995) (quoting *Slowinski v. Valley Nat'l Bank,* 264 *N.J.Super.* 172, 179, 624 *A.*2d 85 (App.Div.1993)), *aff'd,* 145 *N.J.* 144, 678 *A.*2d 225 (1996), and the determination "should be respected by all other lower or equal courts during the pendency of that case." *Lanzet v. Greenberg,* 126 *N.J.* 168, 192, 594 *A.*2d 1309 (1991) (citing *State v. Reldan,* 100 *N.J.* 187, 203, 495 *A.*2d 76 (1985)). The doctrine is a non-binding rule intended "to prevent relitigation of a previously resolved issue." *In re Estate of Stockdale,* 196 *N.J.* 275, 311, 953 *A.*2d 454 (2008). When applicable, it prohibits "a second judge on the same level, in the absence of additional developments or proofs, from differing with an earlier ruling[.]" *Hart v. City of Jersey City,* 308 *N.J.Super.* 487, 497, 706 *A.*2d 256 (App.Div.1998).

The doctrine is not an absolute rule as " 'the court is never irrevocably bound by its prior interlocutory ruling[.]' " *Daniel v. N.J. Dep't of Transp.,* 239 *N.J.Super.* 563, 581, 571 *A.*2d 1329 (App.Div.) (quoting *Sisler v. Gannett Co.,* 222 *N.J.Super.* 153, 159, 536 *A.*2d 299 (App.Div.1987), *certif. denied,* 110 *N.J.* 304, 540 *A.*2d 1283 (1988)), *certif. denied,* 122 *N.J.* 325, 585 *A.*2d 343 (1990). In fact, it is well-accepted that "[a] hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those 'factors that bear on the pursuit of justice and, particularly, the search for truth.' " *Hart, supra,* 308 *N.J.Super.* at 498, 706 *A.*2d 256 (quoting *Reldan, supra,* 100 *N.J.*

at 205, 495 *A.2d* 76). Further, the doctrine is to "be applied flexibly to serve the interests of justice." *Reldan, supra,* 100 *N.J.* at 205, 495 *A.2d* 76.

The record before us does not include the transcript for the November 21, 2007 proceeding, making it impossible to discern why the judge employed the calculations recorded on the Guidelines' worksheet. Nevertheless, we hold that the personal facts and circumstances faced by each child who is to attend college, as well as the financial circumstances of the child's parents, reflect fluid circumstances obviating the rote application of a static formula. Accordingly, we find no error in the motion judge's denial of defendant's request to apply the calculations used in the past.

■ We also address defendant's contention suggesting plaintiff had agreed to use the November 21, 2007 order's formula to compute child support when the children attend college. Defendant asserts plaintiff's failure to appeal the order coupled with her acceptance of support as calculated under the order since its entry is tantamount to an agreement to apply the formula once the younger child embarked to college. We are not persuaded.

There are many reasons—personal and financial—why a litigant might choose not to appeal an order, even if convinced its conclusions might be incorrect. Moreover, plaintiff's compliance with the order does not equate to her acquiescence to its future implementation. Accordingly, defendant's argument is rejected.

Defendant's related contentions seeking application of the equitable doctrines of res judicata and collateral estoppel lack sufficient merit to warrant additional discussion in our opinion. *R.* 2:11–3(e)(1)(E).

■ Turning to the issue of child support modification, defendant alleges his annual income had been reduced by one-third and the parties' children were living away at college. These events, alone or in combination, satisfactorily demonstrate a significant change of circumstances necessitating a review of an obligor's child support obligation. The demonstration of a significant

change in financial circumstance is the first step when determining whether modification of a previously set child support award is warranted. *See Glass v. Glass*, 366 *N.J.Super.* 357, 370, 841 *A.*2d 451 (App.Div.) ("The party moving for modification 'bears the burden of making a prima facie showing of changed circumstances.'" (quoting *Miller v. Miller*, 160 *N.J.* 408, 420, 734 *A.*2d 752 (1999))), *certif. denied*, 180 *N.J.* 354, 851 *A.*2d 648 (2004). Once a change in circumstances has been demonstrated, the court next determines the appropriate level of support.

Most child support awards are computed pursuant to the Guidelines, *see R.* 5:6A (stating generally the Guidelines "shall be applied when an application to establish or modify child support is considered by the court"), which "were developed to provide the court with economic information to assist in the establishment and modification of fair and adequate child support awards." Pressler & Verniero, *supra*, Appendix IX–A to *R.* 5:6A at 2495. The Guidelines assume "relative spending on children in the three broad consumption categories" as follows: "38% fixed expenses, 37% variable expenses, and 25% controlled expenses[.]" *Id.* at 2510.[4] Although the record does not contain the November 21, 2007 transcript, it appears the judge, in devising the formula he used to adjust defendant's support obligation, attempted to account for a presumed lessened cost of fixed and variable expenses while the child was away at college. Nevertheless, the

---

[4] The Guidelines include

three broad categories of expenses incurred for children by their parents—fixed, variable and controlled.

*Fixed costs* are those incurred even when the child is not residing with the parent. Housing-related expenses (e.g., dwelling, utilities, household furnishings and household care items) are considered fixed costs.

*Variable costs* are incurred only when the child is with the parent (i.e., they follow the child). This category includes transportation and food.

*Controlled costs* over which the PPR, as the primary caretaker of the child, has direct control. This category includes clothing, personal care, entertainment, and miscellaneous expenses.

[*Ibid.*]

[G]uidelines are intended to apply to children who are less than 18 years of age or more than 18 years of age but still attending high school or a similar secondary educational institution.... [T]he Appendix IX–F support schedules shall not be used to determine parental contributions for college or other post-secondary education (hereafter college) expenses nor the amount of support for a child attending college. The child support [G]uidelines may be applied in the court's discretion to support for students over 18 years of age who commute to college.

....

When determining whether continued financial support for children attending college and/or parental contributions to college education are appropriate, the court shall consider relevant case law and statutes.

[*Id.* at 2513–14.]

See also *Raynor v. Raynor*, 319 *N.J.Super.* 591, 614, 726 *A.*2d 280 (App.Div.1999) ("The [G]uidelines are not applicable when determining the parental obligation for child support of unemancipated college students[,]" and instead, the child support amount is to be set "in light of all the financial circumstances of the parties and children."). Analyzing a student's needs and abilities, along with applicable parental financial flexibility or constraints, allows a court to assess all facets of the child support picture.

In the unusual circumstance where it is determined support for a college student living away from home should be calculated with reference to the Guidelines, the judge must specifically recite all findings underpinning such a conclusion. *See R.* 1:7–4(a) (requiring the court to state the facts determined on every motion).

 In this matter, the order failed to explain why a Guidelines calculation was fitting under the established facts. Consequently, we must reverse and remand to the trial judge to compute the applicable support necessary to provide for the parties' children, taking into account that the children reside on campus and participate in a school sponsored housing and meal plan.

We also must address defendant's conclusion that his child support obligation must be reduced now that the children reside on campus. Defendant asserts the payment of room and board to a university lowers the need for child support. However, he offers

no evidence showing that either child's support needs have lessened since attending college.

The payment of college costs differs from the payment of child support for a college student. *See Hudson v. Hudson,* 315 *N.J.Super.* 577, 584, 719 *A.*2d 211 (App.Div.1998) ("Child support and contribution to college expenses are two discrete yet related obligations imposed on parents."). The typical expenses associated with college attendance include tuition, registration fees, lab costs, housing, board, books, and computer costs. Although the child support needs lessened in certain areas such as room and board, which falls within college costs, arguably other necessary expenses may increase when a child goes to college. *See Dunne v. Dunne,* 209 *N.J.Super.* 559, 570, 508 *A.*2d 273 (App.Div.1986) ("Common sense dictates that a college student requires more for support than a student in high school."); *see also* Madeline Marzano–Lesnevich & Scott Adam Laterra, *Child Support and College: What is the Correct Result?,* 22 *J. Am. Acad. Matrimonial Law.* 335, 373–79 (2009) (arguing the myriad of college costs should be provided in addition to the amount of child support allowed in the Guidelines).

This court has previously acknowledged the possible continued need to maintain a local residence for a child who returns home from college during school breaks and vacations. *Hudson, supra,* 315 *N.J.Super.* at 585, 719 *A.*2d 211. Further, we conceive some child support expenses remain even when a child heads to college, including: transportation (possible automobile maintenance or payments, gasoline, parking, or alternate travel expenses); furniture (such as lamps, shelves, or dorm set-up and small appliances); clothing; linens and bedding; luggage; haircuts; telephone; supplies (like paper, pens, markers or calculators); sundries (such as cleaning supplies, laundry detergent); toiletries (soap, shampoo and other personal hygiene necessaries); insurance (automobile, health and personal property); entertainment for college events and organizations; and spending money. Some of these expenses

may be incurred once, others may vary in need or amount year to year, while the remainder are constant.

This list is not exhaustive, but merely illustrative of costs associated with supporting a college experience. While some of these expenses are the type considered within the Guidelines, many are not, further demonstrating the inapplicability of a Guidelines support award and the need for a trial judge to review the child's needs. *See* Pressler & Verniero, *supra,* Appendix IX–A to *R.* 5:6A at 2498 (stating the economic basis for Guidelines formulation).

Another component impacting this child support calculus considers what portion of the expenses, if any, the student must be responsible to bear. Of necessity, many students share the financial burden of meeting expenses by utilizing savings, summer wages, co-op jobs, work study payments, or part-time employment. The trial judge must consider and determine the child's obligation to pay defined expenses, within his or her ability.

The computation of child support cannot be made in a vacuum as there is a close relationship between college cost and support: the higher the child support order the less money remains available to contribute to college expenses. It also may be more appropriate for a parent to provide direct payments to the student for some of the child's support needs rather than to the other parent. The fact sensitive nature of each of these determinations explains why the Guidelines are ill-suited to make such a support calculation.

On remand, the calculation of child support for the parties' college students must be based on evaluation of the factors enumerated in *N.J.S.A.* 2A:34–23a. Specifically, the judge must determine the children's individual needs and assess the income, assets, debts, earning ability, age, and health of each child and each parent to reach an appropriate level of support. Finally, the other aspects impacting such an award, as we have discussed in this opinion, must be considered.

■ We defer to the trial judge whether a plenary hearing must be scheduled. "[T]he threshold issue is whether the movant has made a prima facie showing that a plenary hearing is necessary." *Hand v. Hand,* 391 *N.J.Super.* 102, 106, 917 *A.*2d 269 (App.Div.2007). In other words, "[i]t is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required." *Shaw v. Shaw,* 138 *N.J.Super.* 436, 440, 351 *A.*2d 374 (App.Div. 1976). In light of the need for the motion judge to conduct additional proceedings on remand, she must determine whether a plenary hearing is necessary to discern the parties' income, the child's needs, the child's contribution, or other materially disputed issues.

We affirm the order denying defendant's request to apply the formula from the November 21, 2007 order as the law of the case. However, we reverse the order fixing child support by using the Guidelines and remand for additional proceedings to complete the calculation under *N.J.S.A.* 2A:34–23a.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.