**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3256-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KELVIN LEERDAM, a/k/a
SIMS, POO, KELVIN ANTOINE
LEERDAM,

     Defendant-Appellant.

_____

> Argued September 23, 2019 – Decided December 9, 2019
>
> Before Judges Moynihan and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 07-06-1109.
>
> Justin C. Bonus argued the cause for appellant Kelvin Leerdam (Justin C. Bonus, attorney; Justin C. Bonus on the brief and Kelvin Leerdam, on the pro se brief).
>
> Ian C. Kennedy, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Kelvin Leerdam appeals from an order denying his motion for a new trial. He was found guilty by jury of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), as a lesser-included offense of murder (count one); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (counts two and seven); first-degree armed robbery, N.J.S.A. 2C:15-1 (counts three, four and five); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count six); first-degree kidnapping, N.J.S.A. 2C:13-1(b) (counts eight and nine); and second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a) (count ten). He was found not guilty of third-degree possession of a handgun without the requisite permit, N.J.S.A. 2C:39-5(b) (count eleven). The sole argument advanced in his pro se merits brief is:

> THE [POST-CONVICTION RELIEF] COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

We discern defendant did not, contrary to the suggestion in his point heading and in his counsel's reply brief, file a post-conviction relief petition (PCR).[1] He

---

[1] Defendant filed a PCR petition in 2013. He argued, in part, in his November 27, 2013 certification in support of that PCR petition, his trial counsel was ineffective for failing to retain an investigator to obtain a sworn statement from

(continued)

filed a motion for a new trial. We affirm the motion judge's denial of that motion.

The facts of the underlying crime, which we glean from "[t]he trial evidence presented by the State, including the testimony of . . . Gina Conway," are extensively set forth in our opinion affirming defendant's conviction and sentence, State v. Wingate, No. A-2090-09 (App. Div. Aug. 30, 2012) (slip op. at 1),[2] and reprised by the motion judge in his written decision; we will not fully repeat them here. Pertinent to this appeal, Gina Conway—who was indicted with defendant on the same counts—spent some time with the victim Allan Plowden who, she learned, carried a large sum of cash in a Louis Vuitton bag. After leaving Plowden on September 21, 2006, Conway met Charly Wingate— who was also indicted on the same counts as defendant, and was jointly tried

_____

his sister, Sonorra Coleman, to "show[] that [he] was at her residence when the offenses were committed." The petition was denied. We affirmed, State v. Leerdam, No. A-4709-13 (App. Div. Mar. 23, 2016) (slip op. at 1), and the Supreme Court denied defendant's petition for certification, State v. Leerdam, 226 N.J. 214 (2016). His subsequent petition for habeas corpus relief, filed in the United States District Court for the District of New Jersey, was administratively terminated by the District Court, which also granted defendant's motion for a protective stay and abeyance because defendant had not exhausted claims related to the new-trial motion, including this appeal.

[2] Our Supreme Court denied defendant's petition for certification. State v. Leerdam, 213 N.J. 388 (2013). The United States Supreme Court denied defendant's petition for certiorari. Leerdam v. New Jersey, 571 U.S. 836 (2013).

with defendant—at a basketball court in Manhattan at around 11:00 p.m. or 11:30 p.m. When Conway told Wingate about Plowden's cash, Wingate said he was "going to get him." Conway interpreted that to mean Wingate was going to take Plowden's money.

The State also presented evidence that Wingate called defendant who arrived at the basketball court less than five minutes after the call. Defendant later left with Conway in a taxi Wingate ordered. The taxi driver, who completed a fare in Queens, drove to pick up defendant and Conway at about 1:00 a.m.

Defendant and Conway, who knew Plowden was staying at an area Holiday Inn, drove to multiple Holiday Inns trying to find Plowden. Telephone records established that calls were made from defendant's phone to the Holiday Inn reservation line. Conway arrived at the Holiday Inn where Plowden was staying at around 4:00 a.m. On the way to Plowden's room, Conway saw defendant don gloves, take a roll of duct tape from his pocket, and display a handgun.

In the ensuing encounter with Plowden and a woman with whom he was sharing a room, Conway and defendant committed the crimes set forth in the indictment. Plowden and the woman were assaulted and bound while the

defendants tried to find Plowden's money. Plowden's business partner, who he had called to the room, was shot and killed when the gun defendant pointed at him was fired during a struggle. After grabbing the money bag and other valuables from the room, Conway and defendant left in the same taxi which had been waiting at defendant's request. Fort Lee police received a general alarm related to the robbery at approximately 4:40 a.m.

During the subsequent investigation, police recovered proceeds from the robbery and two Holiday Inn key cards from the residence of a person Conway knew, at which she left them. After her arrest, Conway gave a statement to police implicating defendant and Wingate. She later testified against them at trial and pleaded guilty to manslaughter and armed robbery.

Plowden failed to identify defendant from two photo arrays; he identified a photograph of a person unrelated to the crimes. The girl with whom he was with in the room identified defendant in a separate array. The taxi driver identified defendant at trial.

Defendant submitted three "affidavits" to the motion judge.[3] The judge denied the motion without an evidentiary hearing, concluding,

---

[3] None of these documents conformed to Rule 1:4-4(a); nor did they conform to Rule 1:4-4(b) as a certification in lieu of oath. Nonetheless, we consider the contents of all three as conforming.

[t]he affidavits presented in support of defendant's motion for a new trial do not present newly discovered evidence. In each of the affidavits, the defendant is purportedly at various locations with friends and his sister. The affidavits are not from strangers who came to provide corroborative evidence of his alibi [about] which he could not have previously known existed. . . . [H]e certainly had knowledge of these alibi witnesses prior to the trial; and had ample opportunity to present their testimonies to the jury.

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000). An "abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,'" Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). A judge considering a motion for a new trial under Rule 3:20-1, "shall not set aside a jury verdict unless 'it clearly and convincingly appears that there was a manifest denial of justice under the law.'" State v. Armour, 446 N.J. Super. 295, 305-06 (App. Div. 2016).

In <u>State v. Carter</u>, 85 N.J. 300, 314 (1981), our Supreme Court repeated the "stringent" test to qualify evidence as newly discovered warranting a new trial: "the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." <u>Ibid.</u> (citations omitted). A defendant must satisfy all three prongs to be entitled to a new trial. <u>State v. Ways</u>, 180 N.J. 171, 187 (2004).

Evidence is considered material under prong one if it has "'some bearing on the claims being advanced' . . . [including] evidence that supports a general denial of guilt." <u>State v. Nash</u>, 212 N.J. 518, 549 (2013) (quoting <u>Ways</u>, 180 N.J. at 188). The Court in <u>Nash</u> recognized that "prongs one and three are inextricably intertwined." <u>Ibid.</u> As such,

> [d]etermining whether evidence is "merely cumulative, or impeaching, or contradictory," and, therefore, insufficient to justify the grant of a new trial requires an evaluation of the probable impact such evidence would have on a jury verdict. Therefore, the focus properly turns to prong three of the <u>Carter</u> test, whether the evidence is "of the sort that would probably change the jury's verdict if a new trial were granted." The characterization of evidence as "merely cumulative, or impeaching, or contradictory" is a judgment that such evidence is not of great significance and would probably not alter the outcome of a verdict. However,

7

> evidence that would have the probable effect of raising a reasonable doubt as to the defendant's guilt would not be considered merely cumulative, impeaching, or contradictory.
>
> [Ways, 180 N.J. at188-89 (citation omitted) (quoting Carter, 85 N.J. at 314).]

Under both of these prongs, the "central issue" is whether the newly discovered evidence has the power to "shake the very foundation of the State's case and almost certainly alter the earlier jury verdict." Nash, 212 N.J. at 549.

The second prong "recognizes that judgments must be accorded a degree of finality and, therefore, requires that the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Ways, 180 N.J. at 192 (citing Carter, 85 N.J. at 314).

At first blush, the affidavits seem material to defendant's whereabouts when the crimes occurred. But none of the affidavits account for defendant during the early morning hours when the crimes actually occurred. William Hughes averred defendant came to his house and, after playing two video games, used Hughes's cell phone to call defendant's sister. After the call, defendant told Hughes he was "going to his sister['s] house in the [B]ronx" after he retrieved his phone from "Mike." Aaron Anderson related that he met defendant in a store

8

on the corner of 142nd Street and Lenox Avenue on September 22, 2006. He said defendant told him "he just left [R]ah['s] house and [was] going to his sister['s] house in the [B]ronx." Defendant asked Anderson to "hold something." Anderson gave defendant $20, and then defendant "left the store and caught a cab out front." Sanorra Coleman's submission, dated October 7, 2016, said that her brother, using a friend's phone, called her on September 21, 2006 at approximately 9:30 p.m. After defendant said he was playing "the game" at a friend's house, he told his sister he was coming over. Coleman said he arrived about forty minutes later while the ten o'clock news was on the air. They "sat on [Coleman's] bed talking for a little" while before Coleman told him she was "getting tired but I love him and . . . was going to sleep." She told defendant he "could spend the night if he wanted to and then gave him a cover and pillow. [H]e was up watching TV the (sic) I passed out."

The affidavits from Hughes and Anderson do not set forth the time of day they encountered defendant. Anderson said he saw defendant on September 22, 2006. It is not known if that was before or after the crimes were committed around 4:00 a.m.; defendant was not immediately apprehended. Coleman did not say when she "passed out." Defendant is said not to have gone to the basketball court until 11:00 p.m. or 11:30 p.m. The affidavits are arguably

material to defendant's contention that he was not at the basketball court with Wingate and Coleman, but that evidence merely impeaches Conway's testimony that he was. As such, it is cumulative, impeaching and contradictory, echoing the trial testimony of defense witness Shamell Foye who said defendant was not at the basketball court that evening. See State v. Coburn, 221 N.J. Super. 586, 600-01 (App. Div. 1987) (holding that new evidence offered to support the defendant's accidental shooting theory was cumulative because the jury already considered and rejected this theory at trial). Further, considering the intertwined first and third prongs, the evidence is not of the sort to change the jury's verdict because none of the three witnesses definitively account for defendant between midnight and 4:00 a.m.

As the motion judge noted, defendant knew all three of these witnesses. He knew where Hughes lived; Hughes admitted as much. He was friendly enough with Anderson to give Anderson "something to hold" and for Anderson to give defendant $20. And, of course, defendant knew where his sister lived in the Bronx. In fact, defendant claimed in his November 2013 PCR certification that his sister could provide alibi information.

Inexplicably, however, the affidavits defendant submitted in support of the motion are dated over seven years after his trial took place. Defendant has

10

not established that these documents could not have been obtained earlier by reasonable diligence.

Inasmuch as defendant failed to establish any of the three prongs of the Carter test, his motion for a new trial was properly denied. We determine any other arguments defendant or his counsel advanced, including those related to a PCR, are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). Again, defendant moved only for a new trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION