**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3142-20

TERESSA SIMBA BHARATH,

    Plaintiff-Respondent,

v.

JAMES H. YOUNG,

    Defendant-Appellant.

_____

> Submitted May 31, 2022 – Decided June 22, 2022
>
> Before Judges Rose and Enright.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FD-10-0167-21.
>
> James H. Young, appellant pro se.
>
> Teressa Simba Bharath, respondent pro se.

PER CURIAM

    In this non-dissolution matter brought under the Uniform Interstate

Family Support Act (UIFSA), N.J.S.A. 2A:4-30.124 to -30.201, defendant

James Young appeals from the May 25, 2021 order fixing his child support obligation. We affirm.

I.

Defendant lives in New Jersey and plaintiff Teressa Bharath resides in Maryland with the parties' two-year-old son. The parties never married.

When the child was one year old, plaintiff filed a UIFSA complaint through the State of Maryland to fix defendant's child support obligation. On May 25, 2021, the pro se parties appeared virtually for an introductory calendar call and a hearing to address the support issue.[1] The proceedings were conducted by a hearing officer (HO).

During the support hearing, the HO elicited testimony from the parties about their wages, the cost of their son's health insurance, and his child care costs. Based on the parties' responses, the HO determined plaintiff's gross weekly income was $1,635 and defendant's gross weekly income, including "incentive pay," totaled $2,833. Further, the HO credited plaintiff's statement that she incurred weekly child care costs of $500 for the babysitter's four-day work week. In response to this testimony, defendant stated, "the only reason

---

[1] We were not provided with a transcript of the calendar call; the transcript from the virtual hearing mistakenly refers to the hearing date as June 25, 2021.

A-3142-20

that we had a babysitter was because child care was closed at the time of our son's birth. . . . I don't see why we have to continue paying the babysitter when there's child care available."  At the HO's invitation, the following exchange occurred:

> PLAINTIFF:  I would like to add that Mr. Young was present in this house at the time that [the babysitter] asked us both for a raise.
>
> [HO]:  . . . . [Y]our child was born during COVID, there were no daycares open.
>
>      . . . .
>
> [HO]:  And you had to get a private sitter so you could work.  That's understandable.  Now at this point things are open again and the cost should be less as you indicate that the daycare provider is an actual nanny when the child could go to a daycare provider.
>
> PLAINTIFF:  Yes.  The nanny, Alisa, she works Tuesday through Friday, so it's [a] four-day week, and it's at that cost.  If I were to enroll [my son] in one of the daycares that are available in the area, Mr. Young is well aware that the cost for that is just about the same in this area.
>
> [HO]:  <u>This is an infant.  Have you checked out the cost, sir, of a daycare four days a week for an infant</u>?
>
>      . . . .
>
> DEFENDANT:  <u>No</u>, we had one appointment at the daycare center, I put a deposit down and that was a year ago so not –

3

> [HO]: <u>Certainly, each would have the right to see if there's anything that's less expensive and still have the same quality</u>. I'm sure . . . both of you as his parents . . . are looking for the quality as well, but <u>if there's a cheaper daycare that you both can agree to, you certainly in the future can file and ask that the order reflect the new daycare cost</u>. But based upon the documents submitted it is clear at this point that Ms. Bharath is paying that $500 per week for the daycare of your son.
>
> DEFENDANT: <u>I don't disagree</u>.
>
> [(Emphases added).]

Next, plaintiff testified that as a frontline worker, she incurred additional work-related child care costs on "a handful of weekends," and paid babysitters between $12 and $15 per hour. Based on this testimony, the HO calculated plaintiff's average cost for work-related child care on weekends amounted to $195 per month. Defendant testified he had no objection to the HO using this amount. But the HO further decreased the amount for plaintiff's overall work-related child care to account for the fact plaintiff or a caretaker would use vacation time at least two weeks out of the year when no child care costs would be paid. Thus, the HO found plaintiff's adjusted work-related child care costs totaled $27,340 annually.

Next, the HO credited defendant's testimony that he paid $23 per week for the child's medical, dental, and vision coverage. Based on this testimony and

4

defendant's statement he never exercised overnight parenting time with the child, the HO found defendant's child support obligation under the Child Support Guidelines (Guidelines) was $600 per week, effective the date plaintiff filed her application for child support.

Additionally, the HO found defendant should receive a credit for any direct child support payments he made to plaintiff after the effective date of the support award, and that any arrears resulting from the award should be satisfied at the rate of $40 per week. Neither party raised an objection to the HO's determinations before the hearing ended. Thus, a Family Part judge executed the May 25 order consistent with the HO's findings.

On appeal, defendant does not challenge "the amount determined for basic child support" but instead argues the sum attributable to child care costs is "excessive according to the New Jersey and Maryland standards for maximum child care and not from a licensed daycare provider." Citing Appendix IX-B under the Guidelines, defendant also contends the HO erred in failing to consider his "recurring travel expenses" for visitation, adding "[t]ravel miles and tolls were . . . submitted to the court but not factored into the weekly child support expenses."

A-3142-20

Plaintiff argues her "child care costs are considered standard in Maryland and not at all excessive." She also contends "[i]n[-]home child care in Maryland does not require a license. A daycare center would require a license." Moreover, she argues defendant's travel expenses "are minimal and as such were not an essential calculation in the proceedings."

## II.

Ordinarily, we defer to the factual findings of the Family Part because of its "special expertise in the field of domestic relations." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Brennan v. Orban, Jr., 145 N.J. 282, 300-01 (1996)). However, questions of law determined by the trial court require de novo review by the appellate court. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We consider the interpretation of the Guidelines to be a question of law.

Although trial judges are given "substantial discretion in making a child support award . . . [m]ost child support awards are computed pursuant to the Guidelines." Jacoby v. Jacoby, 427 N.J. Super. 109, 116, 119 (App. Div. 2012) (internal quotation marks and citations omitted). "In accordance with Rule 5:6A, these guidelines must be used as a rebuttable presumption to establish . . .

all child support orders. The guidelines must be applied in all actions . . . including those involving . . . interstate support." Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 2, www.gannlaw.com (2022). "A rebuttable presumption means that an award based on the [G]uidelines is assumed to be the correct amount of child support unless a party proves . . . circumstances exist that make a [G]uidelines-based award inappropriate in a specific case." Ibid.

The Guidelines take into account the average amount intact families spend on their children and include a "child's share of expenses for housing, food, clothing, transportation, entertainment, unreimbursed health care up to and including $250 per child per year, and miscellaneous items."[2] Id. at ¶ 8. But the Guidelines also recognize there are some child-related expenses that "are not

---

[2] Under Appendix IX-A, transportation expenses are defined as:

> All costs involved with owning or leasing an automobile including monthly installments toward principal costs, . . . lease payments, gas . . . , insurance, maintenance and repairs. Also included are other costs related to transportation such as . . . license and registration fees, tolls and automobile service clubs.
>
> [Pressler & Verniero, Appendix IX-A to R. 5:6A at ¶ 8.]

incurred by typical intact families" and "these expenses should be added to the basic support obligation." Id. at ¶ 9. An example of such an expense is "[t]he net cost (after tax credits) of work-related child care." Ibid. The Guidelines further provide "[c]hild care expenses should be reasonable and should not exceed the level required to provide quality care for the child(ren) from a licensed source." Pressler & Verniero, Appendix IX-B to R. 5:6A, cmt. 1 regarding Line 9. Given these standards and the parties' testimony, including defendant's concession he did not explore the cost of other child care options once the existing child care arrangements were made, we are satisfied the HO properly calculated his share of net work-related child care costs under the Guidelines.

Lastly, regarding defendant's argument the HO mistakenly excluded his visitation travel expenses from her Guidelines calculation, we are not convinced. While the Guidelines permit an adjustment to a child support award for "predictable and recurring extraordinary expenses for the child that are not included in the Appendix IX-F child support awards," including certain parenting time transportation expenses, such expenses "may be added to the basic support amount" only "[i]f approved by the court." Id. at cmt. regarding Line 12 (emphases added).

Here, defendant failed to testify regarding why his visitation travel expenses should be considered "extraordinary" and how often they were incurred. Indeed, the transcript from the hearing is devoid of any testimony about defendant's travel expenses, extraordinary or otherwise.

It is well established we will not consider an argument which was not raised before the trial court. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). See also Pressler & Verniero, cmt. 3 on R. 2:6-2 (2022). "Appellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Accordingly, absent proof of the extraordinary nature of defendant's travel expenses, there was no basis for the HO to approve and include them in her child support calculations, nor for the trial court to do so upon executing a conforming order.

To the extent we have not addressed plaintiff's remaining arguments, they are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

A-3142-20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

10