**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2979-21

ALLISON RODEN,

     Plaintiff-Respondent,

v.

GREGG MISTRETTA,

     Defendant-Appellant.

_____

Submitted December 11, 2023 – Decided April 2, 2024

Before Judges Berdote Byrne and Bishop-Thompson

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FD-04-1925-17.

The Marks Law Group, LLC, attorneys for appellant (Erika Rene Marks, on the briefs).

Stockton Family Law, LLC, attorneys for respondent (Kathleen Pasquarello Stockton and Jessica Ann Beardsley, on the brief).

PER CURIAM

Defendant Gregg Mistretta appeals from an April 20, 2022 Family Part order denying his motion to terminate child support as of May 2020, to determine a fixed amount of college expenses, denying his request for attorneys' fees, and granting plaintiff Allison Roden's attorneys' fees. Having considered the record in light of applicable legal standards, we affirm in part, reverse in part, and remand.

I.

We glean the following facts from the record of the six-day plenary hearing, during which the court heard testimony from the parties, the parties' daughter, and Mistretta's business partner, Brian Lourenco.

The parties were never married, but have a daughter, A.R., who was born in 2002. Each party is currently married with children; Roden has one teenager and Mistretta has three young children.

On May 17, 2004,[1] the parties entered a consent order for parenting time and child support. The consent order obligated Mistretta to pay $1,400 per month in child support. Mistretta's obligation was modified in September 2016, and child support was reduced to $1,350 per month.

---

[1] The consent order is dated May 17, 2004; however, the order was filed on June 22, 2004. As such, the portions of the record and the Family Part's order use June 22, 2004 as the controlling date for the 2004 consent order.

A-2979-21

The consent order also addressed the parties' obligations toward college expenses. Each party agreed to deposit $2,400 into A.R.'s college fund, increasing that amount by $200 per year until each party contributed $3,600 maximum per year until A.R. began college. The parties also agreed to pay the balance of any college expenses based on their respective ability to pay for college. A.R. was to incur student loans in the event the college fund was "insufficient" to cover the full cost of college.

On August 25, 2016, the parties entered another consent order that directed Roden to transfer $5,000, previously deposited by Mistretta, from A.R.'s college account held by her into Mistretta's college account for A.R. The order expressly provided that "[p]ursuant to the June 22, 2004 consent order, each parent [was] required by August 31, 2020 to have at least $57,000 available to contribute to [A.R.'s] college education expenses." Lastly, the parties agreed Mistretta's child support obligation would be recalculated upon A.R.'s graduation from high school.

Although both parties were involved in A.R.'s college search, they separately took A.R. on college tours. A.R. applied to ten colleges and was accepted into her first-choice college, a public university in South Carolina. Mistretta testified that he told A.R. on multiple occasions that he and Roden had

3

saved $60,000 each for college and that she would be responsible for any costs greater than $114,000. Mistretta claimed that he did not have any specific discussions with Roden concerning A.R.'s selection of the university. He further claimed that he did not participate in the free application for federal student aid application process nor was he privy to any financial documents associated with A.R.'s college enrollment.

In contrast, A.R. testified that both parents were "pretty active in the decision-making process" of her enrollment decision. A.R. ultimately decided to attend college in South Carolina and told Mistretta of her choice. She also stated that she received federal grants and loans and worked while in college.

Mistretta timely paid his child support obligations prior to A.R.'s graduation from high school. Following A.R.'s graduation in June 2020, Mistretta, then self-represented, moved to terminate child support and emancipate A.R. He believed that his child support "payments were due to stop when [A.R.] [was] emancipated." The record shows after the filing of that application, their father-daughter relationship fractured.

Mistretta claimed that he had experienced "financial distress" related to the COVID-19 pandemic. He testified that he was self-employed and his entertainment business – a "DJ business and nightclub styled venue" were

reduced to "almost zero money" due to "mass cancellations" related to the pandemic. Mistretta also owned a commercial building that housed the nightclub, which had been vacant since the start of the pandemic, and he had not made mortgage payments on the nightclub in fifteen months as of the date of the hearing. Mistretta claimed that in 2020, the business had "zero" future bookings, he was not collecting deposits, and he had no cash flow. According to his case information statement, Mistretta received $52,000 in unemployment benefits in 2020 and continued to receive them in 2021.

Mistretta also received $200,000 in paycheck protection program (PPP) loans, the majority of which has been forgiven. Most of the funds were used to pay the business credit card, a "couple of mortgage payments," employee payroll for several months, and employee benefits. He also received two COVID-19 economic injury disaster loans (EIDL) for each business, totaling $300,000 that had to be paid back. Lourenco corroborated Mistretta's testimony that the companies suffered financial distress during the pandemic and received two "unforgiveable" EIDL loans.

As of August 2020, Mistretta had complied with the 2016 order and funded $61,000 in A.R.'s college fund while Roden had saved only $5,000. Mistretta believed A.R. was not entitled to the entirety of the $61,000 that was

5

previously held in her college savings account because that money belonged to all his children. Mistretta testified using all of the college fund solely on A.R.'s education because she chose to attend a more expensive school was not fair to his other children, and he closed the college fund designated for A.R. So, by October 2020, Mistretta had deposited the $60,000 from A.R.'s college fund account into the other children's college fund totaling $100,000.

Five months later, Mistretta, represented by counsel, again moved to terminate child support, and requested that his college contribution be deemed sufficient to support A.R. Roden cross-moved, seeking Mistretta's cooperation with the forensic accountant she had retained, requiring payment of A.R.'s spring 2021 college tuition, and requiring the return of funds Mistretta removed from A.R.'s college fund account. Mistretta was ordered to pay A.R.'s Spring 2021 tuition without prejudice.

Four additional orders followed in January, July, September, and October 2021. In each instance except for July, the court required Mistretta to pay A.R.'s college tuition.

Roden testified that she and Mistretta had agreed in 2017 to send A.R. to private school for the remainder of her high school education and that Roden could use her portion of A.R.'s college fund to pay for it. After Mistretta

6

declined to share A.R.'s high school tuition expenses, Roden testified that she spent $35,000 towards A.R.'s private high school tuition, limiting her ability to save for A.R.'s college education. However, she promised that she would contribute the $57,000 in compliance with the 2016 consent order. Roden also testified that she retained a forensic accountant, who prepared an expert report. Based on Mistretta's records reviewed by the accountant, he opined that in 2018, Mistretta's gross income was $243,214 and net income was $199,435; in 2019, his gross income was $196,215 and net income was $160,896; and in 2020, his gross income was $94,711 and net income was $77,683. The forensic accountant noted that the pandemic "significantly impacted" Mistretta's business operations. The forensic accountant further opined that Mistretta's 2021 income would meet or exceed that of 2020, but "not at a material level."

Following the plenary hearing, the court rendered an oral decision, which summarized its findings of facts and reasoning. The court rejected Mistretta's argument that his estrangement from A.R. and the trial court's citation to Newburgh v. Arrigo, 88 N.J. 529 (1982) in the July 15, 2020 order required the application of the Newburgh factors. The court noted that the law was clear that Newburgh does not apply when there's "an agreement, a consent order, and a court order" as long as the terms are "equitable and just."

7

The court found the <u>Newburgh</u> factors did not apply because Mistretta had agreed to contribute towards A.R.'s education in the parties' 2016 consent order and was involved throughout A.R's college selection process. The trial court further determined Mistretta's <u>Newburgh</u> argument was "disingenuous" because both parties envisioned paying for A.R.'s college tuition as evinced in the 2016 consent order. The court found Mistretta had the money, "collected the money," made an application to the court certifying that he had the money, and the first case information statement showed he had the money. However, when his application to terminate child support was denied, he unilaterally closed A.R.'s account. In sum, the court found that Mistretta's testimony was "contradictory," "not credible," and the closure of A.R.'s college account was done in "bad faith" and "really [out of] spite."

Nevertheless, the court addressed each <u>Newburgh</u> factors, finding the parties had an expectation that A.R. would attend college and there was "no question" Mistretta would have contributed to A.R.'s college education had she resided with him, given the parties' consent orders. The court also found that the record did not support Mistretta's argument that he was unaware of A.R.'s higher education pursuits. A.R.'s commitment and aptitude for higher education, along with her conversations with Mistretta, established a reasonable

A-2979-21

expectation that she would attend college and knew how much her parents had saved for college. Further, A.R. informed Mistretta when she made her choice to attend college in South Carolina.

Citing Jacoby v. Jacoby, 427 N.J. Super. 109 (App. Div. 2012), the court explained that there was no presumption that a child's required financial support lessens because the child attends college. The court noted that despite explaining that legal principle to Mistretta on numerous occasions, he "refused to pay." The court considered that Mistretta lived a "very nice lifestyle" with income close to $300,000, had family vacations, made contributions to his savings and retirement accounts and the children's college funds, drove "fancy cars" and paid car loans, and his young children attended day care, camps, and private schools. The court then enforced the 2016 consent order and directed Mistretta to pay $8,673 towards A.R.'s college expenses after considering his prior contributions of $48,327, Roden to pay an additional $31,981.74 towards A.R.'s college expenses, and A.R. to be responsible for any additional college expenses.

After considering the relevant law and statutes, the court then computed child support based on A.R.'s status as an out-of-state college student and her continued reliance on Roden's New Jersey residence. The court determined

A.R's expenses totaled $2,485 per month and apportioned the expenses evenly between the parties. Mistretta was ordered to pay $1,242.50 per month in child support, retroactive to September 2020.

The court also granted Roden's request for attorneys' fees. In analyzing the factors outlined in Rule 5:3-5(c), the court found Mistretta could pay Roden's fees because he had his own fees reimbursed by his father. The court also found that Mistretta took unreasonable positions and lacked good faith throughout the litigation. Based on Roden's submissions, Mistretta was ordered to pay $16,450 of her attorney's fees.

## II.

On appeal, Mistretta presents three arguments. First, the trial court erred in enforcing the August 2016 order regarding college contributions based on his changed circumstances due to the COVID-19 pandemic and Roden's lack of compliance with the court orders. Second, the court erred in establishing a child support award in accordance with N.J.S.A. 2A:34-23a. Third, the court abused its discretion in awarding attorneys' fees to Roden and denying his "good faith" application for attorneys' fees.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Appellate courts accord the trial court's factual findings after

a bench trial substantial deference when "'supported by adequate, substantial, credible evidence' in the record." Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). Deference does not extend to legal issues, which are subject to de novo review. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017). "[W]e do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004). The same standard guides our review of an award of attorneys' fees. Diamond Beach, LLC v. March Assocs., 457 N.J. Super. 265, 285 (App. Div. 2018).

We defer to the credibility determinations made by the trial court because the trial court "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall, 222 N.J. at 428 (quoting Cesare, 154 N.J. at 412). But "[a]ll 'legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review.'" Slutsky, 451 N.J. Super. at 344-45 (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

A.

11

New Jersey's legislature and courts "have long recognized a child's need for higher education . . . ." Gac v. Gac, 186 N.J. 535, 542 (2005). As such, courts should consider the non-exhaustive factors delineated in Newburgh when evaluating a claim for contribution towards the cost of a child's higher education. Id. at 543. When there is an agreement between the parties regarding the child's college education and the agreement is clear as to how expenses should be divided, Newburgh is inapplicable and the "court should enforce the agreement as written." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 591 (App. Div. 2016) (citations omitted).

Applying these governing principles, we conclude the trial court did not abuse her discretion in enforcing the 2004 consent order. The parties' 2004 consent order, reaffirmed in the 2016 order, expressly and unambiguously bound the parties to contribute $57,000 towards A.R.'s college tuition based on their respective incomes. Having reviewed the record, we are satisfied that the trial court correctly followed the 2016 consent order and concluded the Newburgh factors were not applicable, based on Mistretta's involvement in the college process, conversations with A.R. concerning her college fund, and his certification that he had the funds when he filed his first application to

emancipate A.R.  The court found Mistretta not credible, and we discern no error in that finding.

Even if Newburgh was applicable, the court found Mistretta did not present credible evidence of an inequity or a substantial change in circumstances which would relieve him from his obligation to contribute towards A.R.'s college expenses and shifting the sole responsibility to Roden and A.R.  The court evaluated Mistretta's claim that he could not afford to pay any further child support because he has three additional children, and determined the children did not demonstrate a change in circumstances sufficient to require a modification of his child support.  We also add that based on the record, Mistretta has a "reasonable and fairly balanced plan" as shown by the college funds established for each of his three young children.  See Black v. Black, 436 N.J. Super. 130, 153-155 (Ch. Div. 2013).  Assuming Mistretta's three other children aspire to attend college, he has a reasonable amount of time to continue to contribute toward their college funds in preparation for their future education pursuits.  See Enrico v. Goldsmith, 237 N.J. 572, 577 (App. Div. 1990).  Lastly, assuming any estrangement by A.R., it is but one factor within a twelve-factor Newburgh analysis, which was not sufficiently supported by the record.  We see no reason to disturb the trial court order enforcing the 2016 consent order and

finding Mistretta remained financially responsible for his share of A.R.'s college expenses.

B.

Mistretta argues the trial court failed to analyze the factors in N.J.S.A. 2A:34-23a in recalculating his child support obligation. Instead, the trial court considered A.R.'s unverified expenses and incorrectly charged him for off-campus housing when he paid for campus room and board. We are persuaded by Mistretta's arguments.

The obligation of a parent and the right of a child to support may give rise to "the duty to assure children of a college and even of a postgraduate education" Newburgh, 88 N.J. at 544. It is well-established that college contribution differs from child support of a college student. See Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998) ("Child support and contribution to college expenses are two discrete yet related obligations imposed on parents.").

As explained to Mistretta by the Family Part court on numerous occasions, there is no presumption a parent's child support obligation will decrease because the child is attending college. Jacoby, 427 N.J. Super. at 113. Since the "payment of college costs differs from the payment of child support for a college student," an obligor's costs may even rise. Id. at 121. When determining the

A-2979-21

amount of support, courts should evaluate the parties' circumstances based on the factors in N.J.S.A. 2A:34-23a, as well as the child's continued need for a local residence during school breaks and between semesters and other "costs associated with supporting a college experience." Id. at 121-22.

Here, the record shows the trial court mistakenly applied the statute and corresponding legal principles in reviewing A.R.'s expenses as a college student and found most of the expenses to be reasonable. In contrast, the court correctly found gas, restaurants, vacations, and entertainment expenses to be unreasonable, and therefore should be paid by A.R. Second, Mistretta has not offered evidence showing that A.R.'s needs have lessened since attending college. Lastly, even at the peak of the pandemic, Mistretta earned more than Roden, had monthly expenses of over $20,000 per month, and retained over $200,000 in various savings and retirement accounts. We, however, conclude the trial court mistakenly included A.R's $750 monthly rent for her apartment and her $75 in monthly food expenses in the court's child support calculation. Although the 2004 and 2016 consent orders did not allocate college expenses, "[t]he typical college expenses associated with college attendance include tuition, registration fees, lab costs, housing, board, books, and computer costs." Jacoby, 427 N. J. Super. at 121. Therefore, we reverse the provision of the April

15

20, 2022 order, and remand to the Family Part for further analysis consistent with those governing principles.

## C.

Under Rule 4:42-9(a)(1), attorney's fees are allowable "[i]n a family action . . . pursuant to Rule 5:3-5(c)." Rule 5:3-5(c) provides in part that the court, in its discretion, may award attorney's fees to be paid by any party in a Family Part matter who succeeds on "any . . . claims relating to family type matters." The trial court appropriately considered the Rules of Professional Conduct 1.5 factors and rejected Mistretta's claim that he filed his motions in good-faith to determine his child support and college tuition obligations. We agree. As we have discussed, Mistretta routinely refused to abide by the 2004 consent order, was repeatedly ordered to pay A.R.'s college tuition, and unilaterally closed A.R.'s college fund account. Accordingly, we affirm the awarding of attorneys' fees to Roden and the denial of attorneys' fees to defendant.

To the extent we have not specifically discussed any remaining arguments raised by Mistretta, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2979-21