**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4672-17T4

COLEEN FIORE,

    Plaintiff-Respondent,

v.

PETER FIORE,

    Defendant-Appellant.

_____

Submitted May 27, 2020 – Decided July 6, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2115-09.

DiRienzo & DiRienzo, PA, attorneys for appellant (Joseph DiRienzo, on the brief).

Drisgula & Thatcher, LLC, attorneys for respondent (Candice L. Drisgula and Alisa H. Thatcher, on the brief).

PER CURIAM

Defendant Peter Fiore appeals from a January 2, 2018 Family Part order that denied his motion to terminate or reduce his alimony obligation; eliminate or reduce child support; reimburse him for losses sustained due to child dependency tax deductions taken by plaintiff for a portion of his son's college expenses; and for the Mercury Mountaineer lease and buyout payments. He also appeals from a May 8, 2018 order denying reconsideration and granting the parties' motions to fix his alimony arrears in accordance with the January 2, 2018 order.

After our careful review of the record, we affirm except to remand to the Family Part judge for reconsideration of the child support termination date.

I.

The following factual history is derived from the motion record. After almost twenty-one years of marriage, plaintiff Colleen Fiore and defendant divorced in January 2010. They had one child, Peter, born in 1996. The final dual judgment of divorce (JOD) incorporated their Matrimonial Settlement Agreement (MSA), which resolved issues arising from the dissolution of the marriage.

The MSA provided, among other things, that defendant, a college graduate, would pay plaintiff permanent alimony of $31,400 per year or $550

A-4672-17T4

per week, plus two additional $1400 payments in June and October each year. Alimony was premised upon defendant earning "approximately $80,000 from his Fire Department employment" and an imputed "$25,000 per year income from Environmental Pest Control LLC (termite business) for an imputed weekly income of [$2019]."  Plaintiff was imputed an income of $16,640 annually or $320 per week.  The MSA also provided that upon defendant's retirement from the fire department, he could apply for a recalculation of alimony and plaintiff "does not consider such retirement a change of circumstances and he will be left to his proofs."

At the time of divorce, defendant was actively employed as a firefighter at the Rahway Fire Department and working in his termite business.  Plaintiff was a stay-at-home mom during the marriage and worked part-time for a florist.  At times she was unemployed due to health issues.  Plaintiff has a high school education and no significant vocational training.

Defendant agreed to pay $154 per week for child support until Peter was emancipated.  Peter was enrolled at Montclair State University when the parties divorced.  The parties agreed that defendant had the right to claim the child as a dependency deduction on his federal and state returns for tax year 2009.  The MSA included a handwritten provision that indicated the parties might change

this section should the need arise. Defendant argued he was entitled to claim Peter as a dependent on his 2010 and 2012 tax returns and that plaintiff improperly took the deductions in those years. Consequently, defendant claimed he was required to pay additional taxes of $1500 in 2010 and $3000 in 2012.

After the parties divorced, defendant continued working as a firefighter at the Rahway fire department, which he joined in 1989. He also continued to operate his termite business. The service requirement for retirement at the fire department was twenty-five years. Defendant contended it was the parties' mutual understanding he would retire after twenty-five years of service at the age of fifty-nine.

During his time with the department, defendant received between 300 and 350 fire calls and responded to three to five active scenes per month. His responsibilities included entering burning buildings, carrying the hose line into fires, and assisting victims out of cars and buildings.

In 2009, defendant suffered an asthma attack while responding to a structure fire. He was evaluated by the city's doctors who referred him to Dr. Adam J. Rowen, a pulmonologist. Dr. Rowen prescribed prednisone and corticosteroids, which provided short-term relief and enabled defendant to continue working as a firefighter. Over time, defendant claimed his condition

A-4672-17T4

progressively worsened and by 2014, he complained of persistent shortness of breath, which prevented him from performing his duties as a firefighter.

In December 2014, defendant advised plaintiff he planned to retire as a firefighter after surpassing twenty-five years of service, attempted pulmonary rehabilitation, and unsuccessful use of medications. According to defendant, he had continued working despite his medical issues in order to receive his full sixty-five percent pension benefit. Because of his seniority, he was able to "take it easy a little bit."

Thereafter, defendant consulted Dr. John Penek, a pulmonologist, for a second opinion. After an evaluation with Dr. Penek on June 5, 2015, defendant was diagnosed with moderately severe obstructive lung disease—"a category of lung problems associated with air flow on expiration only." Dr. Penek conducted a pulmonary function study, which revealed defendant was operating at sixty-nine percent normal lung function for a person of his age. To a degree of medical certainty, Dr. Penek opined "that [defendant] was permanently disabled from functioning as a firefighter." Dr. Penek concluded that defendant was incapable of performing his job "safely," and retirement was necessary.

In 2015, the termite business had a net income of $32,353 and in 2016, a net income of $24,989, which defendant explained was negatively impacted by

his mother's passing. Currently, defendant's only assets are his business income and firefighter's pension. He does not own any real property or any other assets. In January 2015, defendant reiterated his plans to retire to plaintiff, but the parties could not agree on a modification of alimony.

On September 22, 2015, defendant filed a motion seeking termination or modification of alimony, elimination or recalculation of child support, reimbursement for Peter's college expenses, Mountaineer lease and buy-out payments, and loss of dependent income tax deductions for Peter. In his moving certification, defendant contended he was entitled to relief because he could no longer work as a firefighter due to his pulmonary diagnosis, which rendered him "permanently disabled." He argued his retirement was a changed circumstance warranting termination or modification of his alimony obligation.

Defendant also contended he was supporting Peter and paid 100% of his college tuition, room, board, health insurance, car payments, car insurance, cell phone, and provided him with a debit card for pocket expenses. In May 2016, Peter began residing in an off-campus apartment. Defendant claimed plaintiff was receiving a windfall from the child support payments. As per the terms of the MSA, defendant argued that plaintiff should be required to contribute towards Peter's college costs. Defendant asserted that plaintiff was responsible

6

for the Mountaineer payments under the terms of the MSA. In addition, defendant sought a credit for plaintiff claiming Peter as a tax exemption each year for the four years before he entered college instead of alternating the exemption.

On October 31, 2015, defendant voluntarily retired at the age of fifty-nine from his firefighter position after nearly twenty-seven years of service. Plaintiff was fifty-three years old at the time. Defendant did not seek other employment and intended his termite business to be his sole source of income.

Plaintiff opposed defendant's motion and filed a cross-motion on January 20, 2016. She requested the court deny defendant's application and find him in violation of litigant's rights for failing to pay alimony and child support while his motion was pending. She also sought an increase in alimony payments based on her limited income as a "grunt worker" in a florist shop and clerical jobs. She contended that unresolved knee and lower back injuries prevented her from standing for long periods of time.

Plaintiff has a high school education and worked as a bartender and florist prior to the marriage. Her mother provides her with support. Plaintiff also asserted that on October 2, 2015, she underwent surgery to remove a cervical

spine tumor and she suffers from emphysema, chronic bronchitis, thyroid disease, type two diabetes, and sciatica. Plaintiff also sought counsel fees.

On February 19, 2016, the judge entered an order, reserving all economic issues other than child support, pending referral to a post-judgment early settlement panel and a plenary hearing. As to child support, the judge determined that a recalculation was warranted; he suspended defendant's child support obligation; and requested additional submissions from the parties.

On June 29, 2016, the judge entered an order denying defendant's motion to suspend his support obligations and established pendente lite spousal support of $696 per month. In October 2016 and September 2017, the Family Part judge conducted a plenary hearing on the motions. Both parties testified. Dr. Penek, a realtor, and two fact witnesses also testified. On December 28, 2017, the judge issued a twenty-five-page written opinion followed by a memorializing preliminary order on January 2, 2018 and a final order on May 8, 2018.

The judge denied defendant's motion for termination or modification of alimony, noting "by his actions, [defendant] voluntarily placed himself in the financial position he now confronts and engaged in 'self-help.'" As pointed out by the judge, the testimony of Dr. Penek was "unpersuasive" and incredulous. The judge determined that defendant "did not need to retire;" "exhibited few

difficulties performing his duties managing a pest control business and has a degree in urban planning." Defendant's treating doctor did not testify, and his medical records showed he went to the doctor less than once a year.

On the other hand, "[p]laintiff's needs remain the same as before [d]efendant's retirement." The judge observed plaintiff ambulates with a cane, wears a neck brace at times, and has trouble breathing. She is ineligible for Social Security Disability benefits and owns a house with a $55,000 lien due to defendant at the time of sale.

In reaching his decision, the judge considered the factors under N.J.S.A. 2A:34-23(j) and found plaintiff experienced difficulty saving for retirement. Plaintiff receives $31,400 per year in alimony and a share of defendant's pension, which equals $23,040. An imputation of $16,640 was assessed, but plaintiff has no additional income. The judge excluded the assets distributed by way of equitable distribution in his analysis.

The judge terminated defendant's child support obligations as of September 1, 2017 and denied defendant's motion for reimbursement of lease and buy-out payments and the lost income from the missed dependent tax deductions in 2010 and 2012. The judge denied plaintiff's cross-motion to increase alimony and for counsel fees. This appeal followed.

A-4672-17T4

On appeal, defendant contends the judge erred: (1) by finding there was no substantial change of circumstances warranting a termination or modification of alimony; (2) by finding child support should terminate effective September 1, 2017 instead of May 2016; (3) by limiting his right of reimbursement for funds paid towards the lease and buy-out of the Mercury Mountaineer; and (4) in denying his right to recoup his losses by plaintiff improperly claiming the parties' son as a tax deduction.

## II.

We turn first to defendant's argument that the Family Part judge erred by denying his motion to terminate or modify alimony. Defendant contends he presented "undisputed" evidence that he had a medical condition, which forced his early retirement from his position as a firefighter. He contends the judge erred by finding he did not need to retire for medical reasons and could have continued working as a firefighter, but instead chose to retire after he became eligible for full retirement benefits and failed to seek a comparable position.

We note initially that the scope of our review of Family Part orders is limited. The trial court's factual findings "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). However, a trial court's legal conclusions are not entitled to

10

special deference and are reviewed de novo. <u>Clark v. Clark</u>, 429 N.J. Super. 61, 71 (App. Div. 2012).

New Jersey has a long-standing public policy favoring the use of voluntary agreements to resolve marital controversies. <u>Konzelman v. Konzelman</u>, 158 N.J. 185, 193 (1999). "[F]air and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." <u>Id.</u> at 193-94 (quoting <u>Smith v. Smith</u>, 72 N.J. 350, 358 (1977)). However, a court should enforce a matrimonial agreement only if it is "fair and equitable." <u>Lepis v. Lepis</u>, 83 N.J. 139, 148 (1980).

Moreover, "such agreements should receive continued enforcement without modification only so long as they remain fair and equitable." <u>Id.</u> at 148-49. Our courts have the equitable power to modify alimony and support orders at any time. <u>Id.</u> at 145 (citing N.J.S.A. 2A:34-23). Alimony and support orders are subject to modification based "on a showing of changed circumstances." <u>Id.</u> at 146 (citations omitted). We "must give due recognition" of the broad discretion afforded to trial judges in addressing motions to modify alimony. <u>Reese v. Weis</u>, 430 N.J. Super. 552, 571-72 (App. Div. 2013) (quoting <u>Donnelly v. Donnelly</u>, 405 N.J. Super. 117, 127 (App. Div. 2009)). The court is required to examine and weigh a list of objective considerations when it reviews an

alimony termination or modification request for an obligor who has retired. Landers v. Landers, 444 N.J. Super. 315, 321 (2016).

"Alimony is an economic right that arises out of the marital relationship" and allows a spouse to continue according to "the standard of living enjoyed by the parties prior to their separation." Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quotation marks and citations omitted). The award of "[a]limony in New Jersey is primarily governed by statute." Gayet v. Gayet, 92 N.J. 149, 150 (1983); see, N.J.S.A. 2A:34-23 ("[A]fter judgment of divorce or dissolution or maintenance, . . . the court may make such order as to the alimony or maintenance of the parties, . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . ."). Family courts "have the equitable power to establish alimony and support orders in connection with a pending matrimonial action, or after a judgment of divorce or maintenance . . . ." Crews v. Crews, 164 N.J. 11, 24 (2000).

Because alimony orders define "only the present obligations of former spouses[,]" those determinations are "always subject to review and modification on a showing of 'changed circumstances.'" Ibid. (quoting Lepis v. Lepis, 83 N.J. 139, 146 (1980)); see also N.J.S.A. 2A:34-23 ("[Alimony orders] may be revised and altered by the court from time to time as circumstances may require."). The

moving party "bears the burden of making a prima facie showing of changed circumstances" to initiate this modification. Id. at 28 (quoting Miller v. Miller, 160 N.J. 408, 420 (1999)). Changed circumstances generally means a recent inability to support himself or herself. Lepis, 83 N.J. at 157.

If the alimony order pre-dates September 10, 2014, the request for modification or termination must be reviewed under N.J.S.A. 2A:34-23(j)(3). That section expressly requires "[i]n making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement . . . [and] whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate . . . ." N.J.S.A. 2A:34-23(j)(3). The obligee's ability to have adequately saved is set "apart from other considerations and require[s] . . . explicit analysis." Landers, 444 N.J. Super. at 324.

The statute requires the court to consider other factors, which include:

> (a) The age and health of the parties at the time of the application;
>
> (b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
>
> (c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon

which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[N.J.S.A. 2A:34-23(j)(3)(a) to (h).]

Defendant argues that the Family Part judge improperly determined that he did not establish a prima facie case of changed circumstances. He also contends the judge failed to consider relevant factors and wrongfully rejected Dr. Penek's testimony.

We do not agree that the judge erred in his analysis of the statutory factors. The judge's ruling considered each of the factors under N.J.S.A. 2A:34-23(j)(3). Moreover, the judge summarized Dr. Penek's testimony as follows:

14

Defendant called John Penek as an expert witness concerning his alleged pulmonary disability. The plaintiff stipulated to this expert's qualifications. Dr. Penek was hired by the defendant and earned $2500 for testimony and $500 for an initial exam. The purpose of this presentation was an effort to persuade the court that [defendant] is no longer able to work as a paid firefighter in Rahway. . . . However, Dr. Penek testified that [defendant's] history demonstrated shortness of breath and a generalized difficulty in performing his job duties.

According to Dr. Penek, [defendant] had difficulty climbing stairs, suffered some pulmonary obstruction, and had decreased air entry. In short, Dr. Penek found [defendant] permanently disabled as a firefighter who could not carry out his daily responsibilities. A pulmonary function test [was] performed on [April 14, 2015] finding no acute pulmonary disease with clear lungs. There was no functional capacity evaluation administered. Dr. Penek . . . never treated [defendant] and was not retained by the Rahway Fire Department for any disability alleged by [defendant].

It is undisputed that defendant had suffered from pre-existing asthma and allergies. [He] was not asked or directed to retire by any Rahway official but tendered a voluntary retirement after [twenty-five] years of service.

The judge also stated "[a] pulmonary function test performed on [April 14, 2015] [found] no acute pulmonary disease with clear lungs." The judge found defendant did not suffer from an "acute" pulmonary disease. The judge concluded Dr. Penek's testimony was "unpersuasive."

15

As noted in City of Long Branch v. Liu, 203 N.J. 464, 491 (2010), a fact-finder is free to accept or reject, fully or partially, the opinions of qualified experts. Based upon our deferential standard of review, we conclude that the judge did not abuse his discretion by rejecting Dr. Penek's testimony and denying defendant's motion to terminate or modify alimony.

Defendant also contends the judge erred in his analysis under N.J.S.A. 2A:34-23(j)(2) and (3) by concluding his retirement was voluntary and not based on health-related reasons. We disagree.

N.J.S.A. 2A:34-23(j)(2) specifically addresses situations where an obligor "seeks to retire prior to attaining the full retirement age . . . ." Id. at 322. According to the statute, "full retirement age" means "the age at which a person is eligible to receive full retirement for full retirement benefits under section 216 of the federal Social Security Act (42 U.S.C. § 416)." N.J.S.A. 2A:34-23.

Under that Act, defendant would not become eligible for full retirement benefits until February 25, 2024. See 42 U.S.C. § 416 (l)(1)(E) ("[W]ith respect to an individual who attains early retirement age after December 31, 2021, [sixty-seven] years of age."). Subsection (j)(3), alternatively, addresses "[w]hen a retirement application is filed in cases in which there is an existing final alimony order or enforceable written agreement established prior to the effective

date of this act," which is September 10, 2014. Id. at 321 (citing N.J.S.A. 2A:34-23(j)(3)).

The judge considered defendant's application under subsections (j)(2) and (3). The latter subsection requires that "[i]n making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement as well as the following factors in order to determine whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate . . . ."

On this factor, the judge found

> Plaintiff has experienced difficulty saving for retirement. The [p]laintiff receives a share of [d]efendant's pension which equals [$23,040]. In addition, she receives alimony in the amount of [$31,400] per year. Although $16,640 was imputed to [plaintiff] by a previous judge, she has no other income. The court finds that . . . [p]laintiff is a high school graduate with limited work skills. She owns a home with a modest lien to [defendant] but relies upon her mother for financial support, from time to time. It is unlikely that [plaintiff] will be successful in the workplace. Plaintiff failed to produce expert testimony concerning her alleged medical condition. Therefore, the court is unable to make a reasonable determination concerning any medical problem or disability allegedly afflicting . . . [p]laintiff. However, [p]laintiff had worked as a bartender and a florist when she was younger. She states that she is willing to "work from home" but remains unsuccessful in securing a position. [Plaintiff] is ineligible to collect [s]ocial [s]ecurity

benefits. The court finds that [plaintiff] has accumulated limited savings and at age [fifty-five], will face a substantial hurdle as she ages.

We discern no error in the court's determination that plaintiff was unable to save for retirement. Put into context, plaintiff's limited ability to save for retirement is supported by the record.

The judge then considered the additional factors, which are identical under both subsections (j)(2) and (3). Applying these factors, an obligor must prove by a preponderance of the evidence, that modification or termination of alimony is appropriate. N.J.S.A. 2A:34-23(j)(2) and (3).

The first factor a court must consider is "[t]he age and health of the parties at the time of the application . . . ." N.J.S.A. 2A:34-23(j)(2)(a). Defendant argues that given his poor health condition, his retirement was objectively reasonable. He contends the judge erroneously rejected his unrefuted evidence regarding his medical status and instead focused on the fact that the City of Rahway did not force his retirement.

Next, the court must consider "[t]he obligor's field of employment and the generally accepted age of retirement for those in that field . . . ." N.J.S.A. 2A:34-23(j)(3)(b). As to this factor, defendant argues that firefighters are permitted to retire at age fifty-five, and must retire by age sixty-five. Since defendant retired

18

at age fifty-nine, he contends that he falls squarely within the anticipated and acceptable range for retirement.

The judge addressed the first factor at length and then incorporated his findings from that section into the second factor analysis. As to both factors, the judge found:

> At the time of application, [d]efendant was [fifty-nine]. [Defendant] could have worked until age [sixty-five] but chose to retire at age [fifty-nine]. He received his full benefit package including a lifetime pension and generous health plan. . . . The [C]ity of Rahway did not require [d]efendant to retire early due to any medical condition or disability. Therefore, [defendant's] decision can be characterized as voluntary. . . . [T]he court . . . was unmoved by [Dr. Penek's] testimony.
>
> Dr. Penek was retained by [defendant] for the express purpose of trial testimony. The court finds that [d]efendant may have experienced shortness of breath, limited ability to climb stairs, and decreased air entry but overall, the testimony of Dr. Penek was unpersuasive.
>
> . . . .
>
> The court finds that [d]efendant could have continued working as a Rahway firefighter but chose to retire shortly after becoming eligible to receive full benefits. The court also finds that [defendant] did not actively or seriously seek another job earning a comparable salary as a firefighter once he made the decision to retire.
>
> . . . .

A-4672-17T4

The court might have arrived at a different conclusion had [d]efendant presented an expert from the City of Rahway with an opinion that [d]efendant was <u>forced</u> to retire because of a medical problem. This was not the case however, as defendant offered the testimony of a "hired gun" who earned at least [$3000] for his initial exam and court testimony.

Here, the judge correctly applied the factors and determined that defendant did not need to retire for medical reasons and could have continued working as a firefighter. The judge also found that plaintiff is financially dependent and requires continued spousal support. In his opinion, the judge determined that plaintiff lacks adequate, advanced work skills and is only capable of performing a job earning a minimum wage.

The statute also requires a consideration of "[t]he age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits" as well as "[t]he obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer . . . ." N.J.S.A. 2A:34-23(j)(3)(c) and (d).

On these points, defendant argues that while he was able to accrue additional retirement benefits until he reached the mandatory retirement age of

sixty-five, he was permitted to retire at age fifty-five. Also, he asserts that while he did not have an incentive to retire at the time he did, there was uncontroverted evidence that his medical issues were the driving factor in making the decision to retire and his motive was not improper.

Regarding factor (c), the judge found "defendant was eligible to retire at age [fifty-five]. Defendant was [fifty-nine] when he retired but could have continued working as a firefighter through age [sixty-five], earning a salary greater than his pension."

Regarding factor (d),

> The court questions [d]efendant's motives in retiring. The court finds that [d]efendant waited until he was eligible to receive his full pension and benefit package to step down. Defense counsel concedes at page [five] of his brief that "[defendant's] retirement benefits could have increased until he reached the mandatory retirement age in accordance with state law." Defendant was not pressured by Rahway to retire and was not offered any incentives. His decision was voluntary.

Defendant's arguments are unavailing, and there was no abuse of discretion by the judge. There is substantial, credible evidence in the record to support the judge's findings under these factors.

The judge noted that plaintiff is unable to maintain her monthly household expenses without spousal support. Moreover, the judge found defendant failed

21

to show a substantial change of circumstances that would warrant a termination or modification of alimony.  There is sufficient credible evidence in the record to support the judge's findings of fact and conclusions of law.

We have considered defendant's other contentions regarding the judge's decision on his motion to terminate or modify alimony.  We conclude these arguments lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

III.

Next, defendant argues the judge erred by terminating his child support obligation for the parties' son, Peter, effective September 1, 2017.  Defendant contends that date is inconsistent with the judge's finding that additional support was not required because Peter had been residing in an off-campus apartment since May 2016.  In his opinion, the judge found that Peter "stays at his own apartment more frequently and rarely spends his nights at his mother's home."

In considering the termination of defendant's child support obligations, the judge analyzed the factors relevant to the issue of support, beyond college expenses, for a child who attends college and lives on campus under Jacoby v. Jacoby, 427 N.J. Super. 109 (App. Div. 2012).  The judge weighed the child's needs, earning potential, debts, age, and health; the parent's contribution towards

college costs; and the possible continued need to retain a local residence for schooling.

According to Jacoby, when addressing a support obligation for a child who resides at college, utilizing the child support guidelines to determine the amount is error. Id. at 113. Instead, the calculation of child support under those circumstances should be based on an evaluation of the factors enumerated in N.J.S.A. 2A:34-23(a). Id. at 122. Those factors include:

(1) Needs of the child;

(2) Standard of living and economic circumstances of each parent;

(3) All sources of income and assets of each parent;

(4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

23

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

Here, the judge found:

> [d]efendant has proven that the child's needs have lessened since he began attending college, especially when he moved into the apartment in Clifton. . . . It is undisputed that a large share of the son's expenses are now paid by the father: automobile; auto maintenance and insurance; gasoline; parking pass for school; cell phone; and health insurance. The son resided with his mother during school breaks before he leased an apartment, usually for [three] months during the summer and occasionally during the weekends. The court finds that [plaintiff] provided some benefits and support to [their son] in the form of food, linens, toiletries, and sundries. The [p]laintiff also alleges that she paid for clothing, haircuts, entertainment, food, and spending money on a sporadic basis. Therefore, the court will not disturb the prior child support order in place before [the son's] residence at the Clifton apartment.
>
>     . . . .
>
> [However,] [t]he court finds [d]efendant credible that after the son's sophomore year, he paid for an apartment rental at the rate of $625 per month plus utilities and cable television. The court also finds that [the son] resides at the apartment most of the time, even during breaks.
>
>     . . . .

24

The judge granted defendant's motion on this issue and terminated child support as of September 1, 2017. Defendant challenges the judge's decision setting the child support termination date at September 1, 2017, the commencement of Peter's senior year of college. Both parties acknowledged that Peter resided in the apartment after it was leased in May 2016. The judge found that prior to September 2017, Peter probably spent time at plaintiff's home, and "[p]laintiff pays a nominal (if any) amount for [their son] since he moved." Defendant contends the judge did not articulate why his child support payments should continue for over a year while making other payments for Peter. When defendant raised this issue by way of a motion, the judge said he would consider it but instead issued an order with the same termination date and no explanation.

We are constrained to remand to the Family Part judge to consider whether child support should be terminated on a date in calendar year 2016 consistent with the apartment rental, or to explain his reasons for selecting September 1, 2017. An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." US Bank Nat'l Ass'n. v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Since

A-4672-17T4

the judge did not provide a rational explanation for ordering the effective child support termination date of September 1, 2017, we reverse and remand the May 4, 2018 order insofar as it pertains to this issue for reconsideration by the judge.

IV.

Defendant argues the Family Part judge erred by not requiring plaintiff to reimburse him for monies paid toward the lease and buy-out of the Mountaineer. He contends that under the MSA, the parties agreed plaintiff would be responsible for the lease payments with Ford Motor Credit. In his motion, defendant sought $6,149.99, which represented payments he allegedly made for the Mountaineer between April 20, 2010, and February 2, 2012. He also sought $4000, which he paid to buy-out the vehicle, for a total claim of $10,141.99. At the hearing, defendant presented the judge with copies of his bank statements, which he testified substantiated his claim for the payments, along with a corresponding Ford Motor Credit statement, and a copy of the $4000 check representing the buy-out payment.

In opposition, plaintiff argued that she made payments from her account but was habitually behind and sometimes had to rely on defendant to make payments on her behalf. Plaintiff contended that she reimbursed defendant in

26

cash, which she obtained from her parents, but failed to provide proof other than her mother's partial corroboration for two occasions.

The judge found, however, that defendant did not submit copies of the checks or other "actual proof of payment." The bank statements indicate that defendant made certain payments to "Ford Credit." Plaintiff asserted that the bank statements do not reflect any Ford Motor Credit account information and therefore, do not confirm defendant made the payments.

The judge stated:

> Plaintiff claims that the [$4000] check was a "gift" and [d]efendant has characterized it as a "loan[."] The court finds that the [$4000] check paid by [d]efendant to Bell Ford[1] was for the benefit of the [p]laintiff regarding the Mercury buy[-]out . . . [and] [t]he buy[-]out was strictly for the benefit of the [p]laintiff[. . . .] [E]ven though there was no written contract between the parties concerning this issue, [plaintiff] maintained sole use of the vehicle, enjoyed driving it, and did not want to pay a "lease termination fee[."]
>
> . . . However, since [d]efendant did not submit checks (or other actual proof of payment) to Ford Motor Company, the court respectfully denies a portion of his claim concerning the vehicle. However, the court was persuaded by the [d]efendant's more credible testimony that the [$4000] paid to Bell Ford was primarily for [p]laintiff's benefit and [plaintiff's] testimony that the funds constituted a "gift" was not plausible.

---

[1]  Ford Motor Credit and Bell Ford are used synonymously throughout this opinion.

A-4672-17T4

Consequently, the judge ordered plaintiff to reimburse defendant the $4000 amount. The evidence on this issue was contradictory and was based partly on credibility and insufficient proof of payment. There was sufficient, credible evidence in the record to support the judge's finding, which is entitled to our deference. Therefore, we reject defendant's argument.

V.

Lastly, we address defendant's argument that he was entitled to reimbursement for the losses he allegedly sustained because plaintiff improperly claimed Peter as a tax deduction. Defendant asserts under the MSA, he was entitled to claim Peter as a dependent on his 2010 and 2012 tax returns requiring him to pay additional taxes. He seeks $1500 he lost in tax liability for both years or a total of $3000.

The relevant section of the MSA provides:

> The [defendant] shall have the right to claim the child as a dependency deduction on his federal and state returns for the tax years 2009, 2010 and 2012. In 2012, and each year the child is in college, the parties shall mutually consult with an accountant and determine if it benefits the son's college tuition costs for the [plaintiff] to claim the child . . . for . . . 2012, 2013, and 2014.

The judge noted this MSA provision was "convoluted" and required the parties to consult an accountant to determine who should take the deduction

28

"based on a set of conditions and future circumstances."  The MSA also includes a handwritten provision that indicates the parties might change this section "as the need may arise."

Plaintiff testified that defendant agreed she could take the tax deduction for Peter.  She presented the judge with a series of messages between the parties in which defendant agreed she could take the deduction.  The judge concluded that defendant "failed to substantiate this part of his claim" and only asserted this demand "to add weight" to other aspects of his motion.  Moreover, the judge noted that the exchange only pertained to one year and defendant "never seriously objected to the arrangement" until he filed his motion.  To the contrary, defendant approved plaintiff taking the deduction for one of the two years he now disputes.

Our careful review of the record supports the judge's denial of defendant's claim on this issue.  There is sufficient, credible evidence in the record to support the judge's finding.  Therefore, we reject defendant's argument.

Affirmed in part, and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4672-17T4